THE PEOPLE *vs.* WILLIAM ENOCH.

Under the provisions of the *revised statutes* relative to *homicide*, the indict-ment for *murder* may be in the *common law form*, charging the offence to have been committed *feloniously, wilfully* and *of malice aforethought*, instead of charging it to have been perpetrated from a *premeditated de-sign* to effect the death of the person killed ; but the accused cannot be convicted on such an indictment, of a *felonious homicide with malice aforethought* unless the *evidence* be such as to bring the case within the statutory definition of murder.

The principal object of these provisions of the revised statutes was to res-tore the common law of murder, as it anciently existed. by discrimina-ting between a *felonious killing with malice aforethought*, and a feloni-ous killing *without such malice*, and thus restrict certain cases to the grade of *manslaughter*, which heretofore were held to be murder.

*It seems*, however, that under these provisions many cases will hereafter be deemed *murder*, which, previous to the revision, fell under the grade of *manslaughter*.

Where the offence is *created* by statute, or the statute declares a com-mon law offence, committed under peculiar circumstances not neces-sarily included in the original offence, punishable in a different man-ner from what it would be punished without such circumstances—or where the nature of the common law offence is changed by statute from a lower to a higher grade, as where a *misdemeanor* is declared a *felony*, the indictment must be drawn *in reference to the provisions of the statute*, and conclude *contra forman statuti* ; but where the statute is only *declaratory* of what was previously an offence at common law *with-out adding to or altering the punishment*, the indictment need not con-clude *contra formam*, &c.

Where the execution of the *sentence* of a convict is *respited* by the gov-ernor, for the purpose of having the conviction reviewed by an appel-late court, it is the duty of the sheriff to execute the sentence of the court on the day to which the execution is respited, unless the judg-ment be reversed or annulled, or a further respite be granted ; and it is not necessary in such case that the convict be previously brought into court by *habeus corpus.*

ERROR from the supreme court. Enoch was convicted of *murder* at the Suffolk oyer and terminer in June, 1834, and sentenced to be executed on the 31st July following. His ex-ecution was respited by the governor until the 14th of No-vember, and in the mean time a *writ of error* was sued out, removing the record into the supreme court. In the indict-ment it was charged that the accused, on the twenty-sixth day of September, in the year *one thousand eight hundred and*

*thirty-three*, with force and arms, at, &c. *feloniously, wilfully*, and of his *malice aforethought*, made an assault upon Nancy Enoch his wife, and did shoot and discharge a gun, loaded with gunpowder and shot, *to* and *against* and upon his wife, and that with the shot so discharged from the gun, he *feloniously, wilfully*, and of his *malice aforethought* struck, penetrated and wounded the body of his wife, giving to her, with the shot so discharged from the gun, a mortal wound of which she languished for one hour, and then died; and so it was charged that he *feloniously, wilfully*, and of his *malice aforethought* did *kill* and *murder* his wife, *contrary to the statute* in such case made and provided, and against the peace of the people, &c. The part of the body struck and the appearance of the wound were described with the usual particularity. The indictment contained three counts substantially alike, except that in the first offence was charged to be *contra formam statuti.*

The case was argued in the supreme court at the *July term* by *C. B. Moore* and *J. A. Spencer*, for the convict, and by *D. Wager*, and *C. A. Mann*, for the people. The counsel for the convict adverted to the provisions of the *revised statutes* on the subject of *crimes punishable with death*,* and insisted that the common law form of indictment for murder is no longer applicable to the offence of murder, as defined by the revised statutes; that to charge an individual with feloniously, wilfully, and of his *malice aforethought*, taking the life of another,

---

* The following are the sections of the statute referred to:

2 *R. S.* 656, § 4. The *killing* of a *human being*, without the authority of law, by poison, shooting, stabbing, or in any other means, or in any other manner, is either *murder, manslaugter*, or *excusable* or *justifiable homicide*, according to the facts and circumstances of each case.

§ 5. Such killing, unless it be manslaughter, or excusable or justifiable homicide, as hereinafter provided, shall be murder in the following cases:

1. When perpetrated from a premeditated design to effect the death of the person killed, or of any human being:

2. When perpetrated by any act imminently dangerous to others, and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual:

3. When perpetrated without any design to effect death, by a person engaged in the commission of any felony.

is not charging him with killing a human being with a *premeditated design to effect the death of such being*, because an indictment in the common law form would be sustained by proof of the killing of a human being without a design to effect death, if such death happened in the perpetration of a crime or misdemeanor not amounting to *felony*. Such an offence, though heretofore murder, is now by the revised statutes of no higher grade than manslaughter. 2 *R. S.* 661, § 6. By those statutes, the killing of a human being is murder only in certain specified cases; and therefore, when an individual is called on to answer for the crime of murder, the offence should be charged in the *words of the statute*. 1 *Chitty's Cr. Law*, 218 *to* 286. 1 *East*, 157. *Leach's Cr. L.* 82, 556. *Hawkins, book* 2, *ch.* 25 § 110. *Burr.* 1037. Even at common law *equivalent words* cannot be used, *Hawkins, book* 2, *ch.* 25, § 55; but if they would suffice, to charge the offence to have been committed of *malice aforethought*, is not equivalent to the allegation that life was taken with a *premeditated design*, which includes in it the charge of *express malice*, whilst the charge of taking life with malice aforethought is satisfied by proof of *implied malice*. If any particular design be necessary to constitute the offence, it must be alledged and proved; for without it, the offence is not committed. 6 *East*, 474. 1 *Chitty's Cr. Law*, 233. 2 *id.* 1113. *Starkie's Cr. Pl.* 196. *Russell & Ryan*, 365. The *premeditated design* or *express malice* should therefore have been averred; and being averred, it would have been incumbent upon the public prosecutor to have supported the averment by proof. *Addison's R.* 282. *Wharton's Dig.* 148. The words used in this indictment are as applicable to the offence of *manslaughter* as the crime of *murder*; and had the accused, on his arraignment, pleaded *guilty* to the charge, the court would not have known what judgment to pronounce, whether that of death or imprisonment in the state prison. It is no answer to the objection urged against the indictment, that murder is an offence at common law, and that the conviction may be at common law, although the offence be not charged in the words of the statute, because all punishments prescribed by the common law for offences specified in the revised statutes, and for the punish-

ment of which provision is thereby made, are prohibited, 2 *R. S.*, 701, § 16; and consequently there can be no conviction at common law. Besides, the counsel urged that the exceptions in the statute ought to have been negatived in the indictment, by averring that the killing was not manslaughter, or excusable or justifiable homicide.

The counsel for the people insisted that the revised statutes on this subject created no new offence; the object of the legislature in the enactments respecting murder being simply to declare, that in certain specified cases, in which, under the extended doctrine of *implied malice,* a party had before been deemed guilty of *murder,* should thereafter be held chargeable only with the crime of *manslaughter.* That the law of murder was not changed; on the contrary, with the exceptions before alluded to, it remains as it was at common law the statute on the subject being merely declaratory, and therefore there is no necessity of a change in the form of the indictment. That it is not necessary in the indictment to allege the offence in the *words of the statute,* the rule quoted on the other side from *Chitty* not being supported by adjudged cases. That is enough so to allege the offence, as to bring it substantially within the statute. That to charge a murder to have been committed of *malice aforethought,* is equivalent to the charge of its having been perpetrated with a *premeditated design,* and that in indictments *equivalent words* are sufficient. 2 *Hale's Pleas of the Crown,* 170. 4 *Black. Comm.* 8 *T. R.* 536. They further insisted, that as no exception was taken on the trial to the sufficiency of the proof to establish the crime of murder, it was manifest that the error, if any, was mere matter of *form*; and if so, that the court were authorized by the statute to overlook it. 2 *R. S.* 728, § 52.

The judgment of the oyer and terminer was *affirmed* by the supreme court. The following opinion was delivered in that court:

" *By the Court,* NELSON, J. The error relied upon in this case, to reverse the judgment of the court below, is founded upon an alleged defect in the indictment, which was drawn according to the form in use, on a charge of murder at common law.

" The description of the offence in 2 *R. S. p.* 657, § 5, is supposed to require a material modification in the form of the indictment. The statutes provide, that the killing of a human being, unless it be manslaughter, &c. as afterwards prescribed, shall be murder in the following cases, namely :

" 1. When perpetrated from a premeditated design to effect the death of the person killed, or of any human being.

" 2. When perpetrated by an act imminently dangerous to others, and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual.

" 3. When perpetrated without any design to effect death, by a person engaged in the commission of any felony.

" The first subdivision was intended to define murder from express, and the two others from implied malice.

" We may concede that this indictment must be sustained, if at all, by charging the offence defined in the first subdivision ; because, if proof of express malice was not admissible under it for that purpose, proof of implied malice would not be. We may also concede the general principle applicable to indictments founded upon statutes, that it is necessary to set forth all the facts and circumstances which constitute the offence as defined in the act, so as to bring the prisoner clearly within the statutable offence. Many examples of the great strictness with which this rule is enforced are given in the books, as well as the exceptions to it ; but it is not now material to state them. The same principle or rule of pleading exists in a case where an offence at common law has been raised by statute, by increasing the degree of punishment, as where the benefit of clergy has been taken away, or a misdemeanor has been raised to a felony. Now, yielding the existence of this principle in its full vigor, and its applicability to the indictment in question, (which is more, we think, than can be sustained,) still we are of opinion that the term *malice aforethought,* according to its legal and technical meaning, as well settled by a number of adjudged cases, is so nearly identical with the terms of the statute, ' *premeditated design,*' as to fall within them. The latter words include only express malice, and were used for that purpose ; the former include

the same, and are legal and appropriate language to express it. It is true, they may include implied malice, and are sufficiently comprehensive to admit such evidence to produce a conviction. This was so at common law, and may be so, for ought we see, since the revised statutes, in cases of murder from implied malice as therein limited. Malice aforethought, in common parlance and as originally used, conveyed only the idea of express malice. Its meaning had been enlarged so as to include implied malice by judicial construction ; to define and limit which, was the object, and has been the only effect of the fifth section, above referred to. It was said, on the argument, that under this indictment, the jury might have convicted the prisoner upon proof of implied malice, which, since the revised statutes, would only amount to manslaughter, but which evidence would sustain the terms of the indictment, 'malice aforethought,' and justify a conviction of murder from implied malice at common law. So it might have been said before those statutes, on a conviction of murder upon a similar indictment, that the jury might have convicted the prisoner upon proof which did not amount to murder, but only to manslaughter, as evidence of the latter offence was admissible under it. The consequences thus apprehended, and from which an argument is attempted to be drawn against the conviction in this case, could have been put forth with the same force and pertinency before the revised statutes as since, and would have been equally alarming to the rights of the prisoner. The answer to all this is, that it is the business and duty of the court to see that a proper direction be given to the jury in point of law upon the evidence, and if either court or jury err, the appropriate remedy must be sought. Formerly, the chief of one was by application to executive clemency ; now for the errors of the court, a bill of exceptions may be taken. 2 *R. S.* 736, § 21. *The People* v. *Haynes,* 11 *Wendell,* 557.

"We are not however obliged, nor are we inclined to place our judgment in this case upon the above view, which may be regarded as in some degree a relaxation of the rigid rule applicable to indictments founded upon statutory offences, and which has been seldom departed from ; for, in this case, the

statute has not altered the common law. The offence of murder, as defined in 2 *R. S. p.* 657, § 5, *subd.* 1, 2, 3, was so before the statute, and is but the adoption or introduction into the act of the common law discription of the crime. The 16th section, 2 *R. S.* 701, limits the offence to the cases mentioned in the fifth section above cited; or, in other words, abolishes the offence at common law, except in those cases, and they are left as before existing in our criminal code. Here is no new offence created by the statute, nor a new punishment annexed to an old offence. The case therefore does not fall within the rule, or the reason of the rule supposed to be violated by the form of the indictment; for the offence by statute and at common law are identical, as the act merely adopts the common law discription of the crime as far as it goes.

"The cases of murder from implied malice have been limited by the second and third subdivisions of the fifth section; but those there defined existed before. The crime of murder might have been committed before the revised statutes from implied malice, where the prisoner, while engaged in an unlawful act, under the degree of felony, such as a riot or other misdemeanor, killed another against his intention. By the third subdivision, such lawful act must now be of the degree of felony. This is the only modification of the law of murder; and it would perhaps have been better if it had been declared by a single section, without any attempt to define the offence by statute. It would have been a more direct and simple way to have accomplished all that has been done.

"The rule that the indictment should bring the offence within the words of the statute declaring it, is applicable only in its strict terms to cases where the offence is created by statute, or where the punishment has been increased, and the pleader seeks to bring the prisoner within the enhanced punishment.

"It is a clear proposition that an approved form of indictment for an offence at common law, is good for the same offence, though declared by legislative enactment. Were it not so, the revised statutes would be found to overthrow most of the established precedents; as the leading crimes punish-

able in this state, and the definition of which has heretofore depends upon the common law, are now incorporated into those statutes and are there defined, and, in many instances, in language differing from that deemed appropriate at common law.

" The leading authorities which we have consulted, and which will be found to contain the views and principles set forth in this opinion, are the following : 1 *Chitty's Cr. Law*, 281, 286, 290. *Hawkins. b. 2, ch.* 25, § 110, 115. *Foster*, 424, 256. 1 *Saunders*, 135, *n.* 3. 4 *Black. Comm.* 195, 198. *Note of Revisors to* § 5, *of* 2 *R. S.* 657."

A writ of error was then sued out removing the record into this court. The cause was argued here by

*C. B. Moor & J. A. Spencer*, for the prisoner.

*S. B. Strong* (district attorney of Suffolk) and *Greene C. Bronson*, (attorney general,) for the people.

The arguments of the counsel for the prisoner were much the same as those presented on his behalf in the supreme court. The following is a sketch of the reply of the District Attorney of Suffolk :

1. A premeditated design to effect the death of the person killed is averred with sufficient certainty in the indictment. No doubt it is necessary in some instances to allege a *particular* intent. This is the case where a particular intent accompanying an act is necessary to constitute it a crime, 6 *East*, 473, 4 ; 1 *Chitty's Cr. Law*, 233 ; as in assault, with intent to commit a felony, burglary and forgery ; so also where the means used do not sufficiently indicate the intent to accomplish the end, as in murder by poisioning. But where the act is in itself unlawful, an evil intent will be presumed, and need not be particular averred or proved. 6 *East*, 473, 4, *per Lord Elenborough. Rea* v. *Medfall*, 5 *Burr.* 2667. Man is supposed to act from premeditation ; it is a legal inference that he intends what he performs, and to effect the ordinary results of his acts. 2 *Stark. Ev.* 739. 3 *Maul. & Selw.* 15.

Where a *general felonious* intent is sufficient to constitute the offence, it is unnecessary, and would be improper to aver the particular design. 2 *Stark. Ev.* 740. *East's P. C.* 514. In such cases the intent to commit any felony is transferred and applied to the felonious act. Killing a human being is *prima facie* unlawful. *Foster's Cr. Law*, 255. It is presumed in law to be felonious and malicious, until the contrary is shown in evidence. 4 *Black. Comm.* 201. 3 *Chitty's Cr. Law*, 730. It is not therefore necessary at common law to aver in *hæc verba* the particular intent, except where the death is produced by indirect means. Murder is the killing of a human being with *malice aforethought*. A premeditated design to kill is sufficiently expressed in the terms malice aforethought. "Express malice," says Sir William Blackstone, 4 *Black. Comm.* 199, "is where one, with a sedate deliberate mind and formed design, doth kill another." The same definition is given in 2 *Stark. Ev.* 947. The prisoner, in this case, is charged with killing his wife, from a formed design to do so. This is the presumption of law where the killing is proved. 4 *Black. Comm.* 201. *Ld. Raym.* 1493. The defendant must then reduce the crime by evidence. If he proves an intent to kill another, or to commit some other felony, or to perpetrate an act imminently dangerous to others, neither of these is an excuse or a variance from the general charge contained in the indictment; they are all considered as equivalent to a deliberate act of slaughter. 1 *Hale's P. C.* 454, 466, 473, 4. 4 *Black. Comm.* 200. In these cases the intent is not in fact proved as charged, but it is sustained by implication of law. The indictment in this case is drawn conformably to the precedents at common law. 3 *Chitty's Cr. Law*, 752, 3. And it is insisted that the revised statutes require no different or additional averments in indictments for murder than are required at common law. It is admitted that where new crimes are created, or additional particulars are required, or greater punishments are awarded, averments should be inserted in the indictments, corresponding with the description of the offence in the statutes; but the revised statutes relative to murder create no new offence, require no additional particulars, and do not add to the punishment. The preamble to the act con-

cerning crimes, 2 *R. S.* 655, expresses the object of that act to be, to consolidate and arrange the several statutes then existing relative to crimes, punishments, criminal proceedings and prison discipline—to simplify their language and supply their defects and omissions, but do not express any intention to make an entire new code. The statute concerning capital crimes, 2 *R. S.* 656, § 1, speaks of the crime of murder as therein declared; and the *Revisors by their note to* 2 *R. S.* 667, § 5, express their intention simply to reduce murder from implied malice in certain cases to manslaughter. Murder, at common law, confessedly comprehended every case declared or defined in the three subdivisions of 2 *R. S.* 657, § 5. The punishment for murder, at common law, was the same as that directed by the revised statutes. The provision relative to common law punishments, 2 *R. S.* 701, § 16, is therefore inapplicable. In such cases the common law forms are not altered. 1 *Chitty's Cr. Law*, 289, *n. t.*, 291. 2 *Hale's P. C.* 189. The crime of murder has been defined, and in many cases considerably reduced in the states of Pennsylvania and Virginia; 5 *Laws of Penn.* 236, *ch.*, 1, 22*d April*, 1794; 1 *Revised Code of Virginia*, 616; but it has been held in both of those states, that no change is requisite in the forms of the indictments. 6 *Binn.* 179, 183. 1 *Virginia Cases*, 310. The forms of process and pleadings are a part of the common law, and should be preserved. *Co. Lit.* 303, *a. b.*, 330, *a.* *Ch. Pl.* 235, 6. The technical terms contained in the indictment in this case, to designate the *intent* at common law, express the same intent under the statute. Where an interpretation has been given to words at common law, they express the same meaning under the statute. 4 *Paige*, 252, *per Walworth, C.* Even a change of phraseology in the revised laws is not deemed a change of the law, nor does it work a change in the established interpretation, unless such phraseology evidently imports an intention in the legislature to make a change. 2 *Caines' Cases in Er.* 151. 4 *Johns. R.* 359, *per Kent, Ch. J.* Again; killing with a general malicious and felonious intent, is in every instance murder, within the provisions of the revised statutes; and we have seen that in such cases the general averment in this indictment is sufficient. It is contended for

ALBANY,
Dec. 1834.

The People
v.
Enoch.

the prisoner, that the implication of malice is done away by the statute. This surely cannot be so. There is no express provision to that effect, nor can it be intended that the legislature meant to enact that he who takes away the life of his fellow man shall be presumed to have done it innocently. The legislature have merely declared that killing, under certain circumstances, shall not be deemed malicious, and has left it to the accused to prove those circumstances. To require the public prosecutor to aver in *hæc verba* the particular intent, would be productive of great evils. In murders committed in secret it is often impossible to ascertain the particular design. The means used can be ascertained with sufficient certainty from the appearance of the wounds, but the intent may be wholly unknown. If the particular intent must be averred, it must be proved as laid, and a variance would be fatal. 3 *Chit. Cr. Law*, 1098. So also, if the intent could not be *positively* fixed, the accused must be acquitted. It is now difficult to convict a secret murderer—it would then be impossible. The accused, when acquitted of the accusation of murder on the ground of variance could not be tried again for murder ; nor could he be subsequently indicted for manslaughter. At common law an acquittal for murder is an acquittal for manslaughter, 1 *Chit. Cr. Law*, 455 ; and the revised statutes, 2 *R. S.* 701, § 24, authorize a new indictment only for the same offence. Besides, if the intent must be specially averred and proved, one indicted for murder could not be convicted of manslaughter; hence the design in the two cases must be very different. If the accused should be proved to have been guilty of manslaughter, there must necessarily be a fatal variance. The provision of the revised statutes, authorizing a conviction for an offence less than that charged, would be inapplicable to cases of homicide. Again ; a change of the law does not necessarily call for a correspondent change in the forms of pleadings ; as in declarations on leases for a longer term than three years, it is not necessary to aver that they are in writing. 2 *Salk.* 519. Nor for goods bargained and sold, where it is necessary that the contract should be in writing. 1 *Saund.* 211, *n.* And

ALBANY,
Dec. 1834.

The People
v.
Enoch.

no more certainty is now requisite in indictments than in declarations. 2 *Strange*, 904. *Chit. Cr. Law*, 168. *Comb*. 460. Not even in matters of form, since the passage of our statute of jeofails in criminal cases. 2 *R. S.* 728.

2. The terms and averments used in the indictment distinguish this case from the cases reduced from murder to manslaughter by the revised statutes. The latter are simple felonious homicides; they are not killing, with *malice aforethought*. Those terms are inapplicable to such cases, and do not designate them. The averment that the *murder* was *wilful*, and the facts set forth in the indictment, show that this case does not fall under the sections of the act concerning manslaughter. 2 *R. S.* 661, 2. The nineteenth section of the act defining *manslaughter* is peculiar. It could not have been framed with a design to reduce a case of wilful murder by shooting, to manslaughter in the fourth degree. Indeed, there is a singular want of precision in that section, taken in connexion with the section defining murder. The latter section declares certain cases to be murder, if they are not afterwards designated as manslaughter, &c.; and the nineteenth section designates all killing manslaughter of the fourth degree not before declared to be murder, &c. But even if the expressions contained in this indictment are broad enough to include not only the cases still declared to be murder, but also those reduced to manslaughter, the objection would not be fatal. Where a matter is susceptible of different meanings, that shall be taken which will support a declaration or indictment, and not the other which would defeat it. 1 *Salk*, 325, 5 *East*, 257. 1 *Chitty on Pl.* 242. No injury can result from the application of this rule to cases of murder. The question whether the malice required by the revised statutes to constitute the offence existed, was at issue. Without this species of malice it would have been the duty of the court to have instructed the jury to acquit the prisoner.

3. It is objected that the indictment does not contain any averment that the killing was not manslaughter, nor excusable or justifiable homicide. If it is meant by this that the indictment should negative all the facts which would reduce the offence, the answer is that it would be utterly impossible to do so. It

would require an indictment longer than the statute itself. If it is contended that a general averment to that effect should have been inserted, it is answered that the expressions *"murder"* and *"malice aforethought"* sufficiently indicate the same meaning; but the averment was altogether unnecessary. Even when crimes are created by statute, it is not necessary to state that the defendant does not come within the exceptions, though the purview should expressly notice them, as by saying that none shall do the act prohibited, except in the cases thereinafter excepted. 2 *Burr.* 1036. 1 *Chit. Cr. Law,* 283. 231, 232. Besides, if an indictment for murder should particularly negative manslaughter, how could the accused be convicted for the latter offence under it? The conviction would be against the charge.

4. The error, if any, is cured by the verdict. The rule is, that where there is any defect, imperfection or omission, in any pleading, whether in substance or form, which would have been a fatal objection upon demurrer, *if the issue joined be such as necessarily required on the trial proof of the facts,* so defectively or imperfectly stated or omitted, and without which it is not to be presumed that either the judge would direct the jury to give, or the jury would have given the verdict, such defect, imperfection or omission is cured by the verdict, by the common law. 1 *Saund.* 228, *a., n.* 1. 11 *Wendell,* 40. 13 *Johns. R.* 48, 80. 11 *id.* 142. The want of sufficient certainty is generally aided by verdict at common law. 1 *Ch. Pl.* 261. *Rex* v. *Middleton,* 6 *T. R.* 739. *Howard* v. *Banks,* 2 *Burr.* 1113. There is no reason why this rule should not apply to *criminal proceedings.* The defendant can avail himself of any defence under the general issue. 4 *Black. Comm.* 338. 1 *Erskine's Speeches,* 278. 1 *Chit. Cr. Law,* 471. He is now entitled to his bill of exceptions, 2 *R. S.* 736, and after conviction, can apply for a pardon. In cases of this kind appeals are frequently made to the court in *favorem vitæ.* Until the accused is convicted by competent evidence, every presumption should operate in his favor; but after a fair and impartial trial, and a satisfactory conviction, technical objections are not entitled to favor. The natural leaning of the mind, observes Lord Kenyon, 1 *East,* 314, is in favor of prison-

ers, and in the mild manner in which the laws of this country are administered, it has been a subject of complaint with some, that the judges have given away too easily to formal objections in behalf of prisoners. Lord Hale observed, 2 *Hale's P.C.*, 193, that the strictness required in indictments was grown to be a blemish and inconvenience in the law, and the administration thereof; that more offenders escape by the over easy ear, given to exceptions to indictments, than by the manifestation of their innocence; and that the grossest crimes had gone unpunished by reason of these unseemly niceties. Chitty also remarks, 1 *Chitty's Cr. Law*, 171, that the criminal cases where the public security is so deeply interested in the prompt execution of justice, it seems that minor considerations should give away to the greater, and technical objections be overlooked, rather than the ends of society should be defeated.

The following opinion was delivered :

By the CHANCELLOR. The plaintiff in error has been convicted of the crime of murder, for an offence committed subsequent to the revised statutes ; but the conviction is upon an indictment in the usual form, in which indictments for that offence were framed previous to the revision. The important question presented by this writ of error, therefore, is, whether the revised statutes, in which the crime of murder is attempted to be defined and declared, have made it necessary for the public prosecutor to change the common law form of the indictment for an offence of that description.

Where an offence is created by statute, which was not an offence by the common law, it is a general rule that the indictment must charge the offence to have been committed under the circumstances and with the intent mentioned in the statute, which of course contains the only appropriate definition of the crime. *State* v. *Jones*, 2 *Yerg. Ten. R.* 22. *State* v. *O'Bannon*, 1 *Bayley's Law R.* 144. But even in that case it is not necessary to pursue the exact words of the statute creating the offence, provided other words are used in the indictment which are equivalent, or words of more extensive signification, and which necessarily include the words used in

the statute—as where *advisedly* is substituted for *knowingly*, or *maliciously* for *wilfully*, and the like. *The King* v. *Fuller*, 1 *Bos. & Pull.* 180. *United States* v. *Bachelder*, 2 *Gall R.* 15. It is otherwise in indictments for common law offences, where the law has adopted certain technical expressions to define the offence, or to indicate the intention with which it was committed ; in which cases the crime must be described, or the intention must be expessed by the technical terms prescribed, and no other. Thus, in an indictment for murder, the terms *murder of his malice aforethought* are considered absolutely necessary in describing the offence ; and if these words are left out of the indictment, it will be deemed a case of manslaughter only. In determining the question whether an indictment should be drawn as at the common law, or should appear to be founded upon a statutory provision which is applicable to the offence, the following rules are to be observed : If the statute creates an offence, or declares a common law offence, when committed under particular circumstances not necessarily included in the original offence, punishable in a different manner from what it would have been without such circumstances ; or where the statute changes the nature of the common law offence to one of a higher degree, as where what was originally a misdemeanor is made a felony, the indictment should be drawn in reference to the provisions of the statute creating or charging the nature of the offence, and should conclude against the form of the statute ; but if the statute is only declaratory of what was previously an offence at common law, without adding to, or altering the punishment, as was the statute of 25 *Edward* 3, declaring what should be considered and adjudged treason, the indictment need not conclude against the form of the statute. 1 *Deac. Crim. Law*, 661.

The object of the legislature in adopting the provisions of the revised statutes relative to homicide, in the recent revision of the laws, certainly was not to create a new offence of murder ; but the intention undoubtedly was to restore the ancient common law on that subject, as it existed at the time when the common law form of indictment was originally adopted, and to draw a proper line of discrimination, if possi-

ble, between the offence which was hereafter to be considered a felonious killing, with malice aforethought, which alone constitutes the crime of murder, and what was to be deemed a felonious killing without such malice. How far they have succeeded as to the last of these objects, may perhaps be considered as a matter of some doubt. But they have unquestionably succeeded in restricting some cases to the grade of manslaughter, which, upon the principles of the common law, never ought to have been considered or adjudged to be offences of a higher grade; such as the unintentional killing of a person, by an offender who was engaged in a riot or other offence, that was a mere misdemeanor, and not a felony.

There is another class of cases, referred to on the argument as cases of murder at the common law, which, under the provisions of the revised statutes, must hereafter unquestionably be considered and adjudged to be manslaughter, and not murder. And there is also another and much larger class of cases which hereafter must be deemed murder, by reason of the implied malice that will now attach to the unlawful killing; which cases, before the revision of the statutes, were cases of manslaughter only. The two classes to which I allude, depend, however, upon a principle which does not require any change to be made in the common law form of the indictment for murder. Malice was implied in many cases at the common law, where it was evident that the offenders could not have had any intention of destroying human life, merely on the ground that the homicide was committed while the person who did the act was engaged in the commission of some other felony, or in an attempt to perpetrate some offence of that grade. Every felony, by the common law, involved a forfeiture of the lands or goods of the offender, upon a conviction of the offence; and nearly all offences of that grade were punishable with death, with or without benefit of clergy. In such cases, therefore, the malicious and premeditated intent to perpetrate one kind of felony, was, by implication of law, transfered from such offence to the homicide which was actually committed, so as to make the latter offence a killing with malice aforethought, contrary to the real fact of the case

as it appeared in evidence. This principle is still retained in the law of homicide; and it necessarily follows, from the principle itself, that as often as the legislature creates new felonies, or raises offences which were only misdemeanors at the common law to the grade of felony, a new class of murders is created by the application of this principle to the case of killing of a human being, by a person who is engaged in the perpetration of a newly created felony. So, on the other hand, when the legislature abolishes an offence which at the common law was a felony, or reduces it to the grade of a misdemeanor only, the case of an unlawful killing, by a person engaged in the act which was before a felony, will no longer be considered to be murder, but manslaughter merely. Such changes in the law of murder have often occurred, both in this country and in England; yet it never has before been thought necessary to change the common law form of the indictment to meet cases of this description. The court and jury in such cases immediately apply the common law principle, and the killing is adjudged to be murder or manslaughter, according to the nature and quality of the crime that the offender was perpetrating at the time the homicide was committed.

Let us then apply these principles to the case now under consideration. The revised statutes having declared that hereafter offences punishable with death or with imprisonment in the state prison, and such offences only, shall be deemed felonies, it follows of course that an accessory to a suicide, or a person who unintentionally kills in an attempt to perpetrate a first offence of petit larceny, could not now be guilty of the common law offence of murder; and therefore the jury could have found him guilty under an indictment like the one now before us. The unintentional killing of a female, in an attempt to produce an abortion, with her own consent, was not in itself murder, although at the common law, if she was quick with child, it formed a very aggravated case of felonious homicide; and it is now made murder in England, by the operation of the statute which makes the destruction of the child a capitol felony. It was also murder here, by the operation of the third subdivision of the fifth section of the revis-

ed statutes, which attempt to define the crime of murder, until the legislature, by the amendment of the ninth section of the next title, 2 *R. S.* 661, § 9, 3 *R. S. app.* 158, § 58, made the killing of the mother, as well as the child, a case of manslaughter only. Some other cases of unintentional killing, by persons engaged in riots and other misdemeanors below the grade of felonies, which previous to the revision had also been improperly considered as cases of murder contrary to the principles of the ancient common law, are now restored to that grade of homicide to which they properly belong. All offences of that description are now placed in the class of homicides committed without malice aforethought; except where the killing is perpetrated by an act imminently dangerous to others, and evincing a depraved mind, regardless of human life; which circumstances now, as at the common law, are sufficient to authorize the jury to find the defendant guilty of killing with malice aforethought.' 2 *R. S.* 657, § 5, *sub.* 2. From this examination of the subject, I have arrived at the conclusion that a common law indictment for murder is proper, and under the provisions of the revised statutes. And a defendant cannot be convicted on such an indictment of a felonious homicide with malice aforethought, unless the evidence is such as to bring the case within the statutory definition of murder.

The cases referred to on the argument, from the Pennsylvania and Virginia reports, have no application to the question under consideration, as the statutes of those states have divided murder into two grades, and have provided a way in which the grade of the offence shall be ascertained upon an ordinary indictment; which indictment the legislatures of those states evidently intended should be drawn as at the common law, so as to include both grades of the offence. The only cases I have been able to find in the reports of our sister states, which bear any analogy to that now under consideration, is one in the state of *South Carolina,* and two others which have arisen in the state of *Indiana.* In the case of *Guy Raines,* who was indicted under the statute of South Carolina, to increase the punishment inflicted on persons convicted of murdering slaves,

which statute provides, that if any person shall thereafter

wilfully, maliciously and deliberately murder any slave within the state, such person on conviction shall suffer death without benefit of clergy, the indictment pursued the words of the statute, and concluded *contra formam statuti.* But judge Colcock held that the indictment was insufficient   He said that the offence should have been charged in the indictment as at common law ; and that all the essential parts of the common law indictment should have been pursued.   3 *M'Cord's Law R.* 543.   In the state of Indiana, as I infer from judge Blackford's reports, they have a statute declaring what shall constitute the crime of murder, and prescribing the punishment of the offence, substantially as at common law, although not in the words of the common law indictment for that offence ; and yet the supreme court of that state have twice decided that a common law indictment was sufficient. *Fuller* v. *The State,* 1 *Blackf. R.* 65.   *Jerry* v. *The State, id.* 396.

One object of our revised statutes was to get rid of those technical difficulties that had so justly been complained of as a disease of the law ; which, without being necessary for the protection of any substantial right of the accused, had so frequently entangled justice in the net of form ; and this object of the legislature will certainly be best promoted by adhering to the common law form of indictment in cases of murder, the nature of which offence has not been materially changed in the revision of the laws.

I think the judgment of the court below is right, and that it should be affirmed. I am also of the opinion that in a case like the present, where the execution of the sentence is respited by the governor until a particular day, it is the duty of the sheriff to proceed and execute the judgment of the court at that time, unles a further respit is granted, or the judgment has been reversed or annuled in the mean time.   I am also of opinion that this is not a case in which it is necessary to sue out a writ of *habeas corpus,* and to have the convict brought into the supreme court before the sentence of the law can be executed upon him. The judgment of affirmance may, therefore, contain a special direction to the sheriff to execute the sentence

ALBANY,
Dec. 1834.

Jackson
v.
Waldron.

on the day to which the execution thereof was last respited by the governor.     .

It being the unanimous opinion of the court that the judgment of the supreme court ought to be affirmed, it was accordingly *affirmed*.