As it appeared that the injuries upon the head of the deceased had no part in causing her death, we may lay them entirely out of view in considering this case. The whole case, then, is this. The prisoner made three several assaults upon the deceased, and beat her with his fists in the pit of the stomach, which caused her death. The fact that the prisoner had threatened to kill the deceased certainly made the case a proper one in which to submit to the jury the question, under the first subdivision of the definition of murder, whether the act was done from a premeditated design to effect death. But the judge charged that the prisoner might be convicted under the second subdivision of the definition of murder, which applies to a killing "perpetrated *Page 158 
by any act imminently dangerous to others, and evincing a depraved mind, regardless of human life, although without a premeditated design to effect the death of any particular individual."
I think that subdivision was designed to cover a very different class of cases; such as where death is caused by firing a loaded gun into a crowd, by poisoning a well from which people are accustomed to draw water, or by opening the draw of a bridge just as a train of cars is about to pass over it. In such and like cases, the imminently dangerous act, the extreme depravity of mind, and the regardlessness of human life, properly place the crime upon the same level as the taking of life by premeditated design. But these expressions are not applicable, and cannot be made so, to a mere case of the commission of a battery with the fists, without a design to effect death, but from which death ensues. In this opinion I concur with Senator WAGER, in ThePeople v. White (24 Wend., 583), and with Justice COWEN, inThe People v. Rector (19 Wend., 591), and differ from other judges who expressed different opinions in those cases, as well as from the dicta in The People v. Enoch (13 Wend., 159). If the judge was right in his charge in this case, there is no security against a conviction for murder in every case where a person intends merely to beat with his fists, and accidentally causes death, and in every other case of manslaughter caused by personal violence, because the accused could hardly deny that the act was imminently dangerous, when it proved so by causing death; and every beating with the fist evinces a certain depravity of mind, because there is a design to do wrong to the extent, at least, of committing a misdemeanor, and to some extent there may be considered a regardlessness of human life in such case, because such a beating might cause death. If such a construction is admissible, the absurdity is presented of putting the offence of killing without design by a person engaged in the commission of a misdemeanor, on the same level with a *Page 159 
killing without design by a person engaged in the commission of a felony, and punishing both with death; thus restoring the law as it stood before the adoption of the Revised Statutes, when it is the plainly expressed intention of the revision to mitigate the former offence by reducing it to manslaughter.
A careful examination of the section defining murder and the sections defining manslaughter will show, I think, very clearly, the erroneousness of the charge in this respect. The section defining murder declares, "such killing, unless it bemanslaughter," c., "shall be murder in the following cases." This qualification is made applicable to each of the three following subdivisions. If it is not manslaughter, it is murder "when perpetrated by any act imminently dangerous to others," c. If it is manslaughter, that is, if the facts proved bring the case within either of the descriptions of manslaughter, it can in no case be murder. Now in the case before us, if there was no premeditated design to take life, so as to bring it within the first subdivision, and it was upon that supposition that the charge was made, the case falls precisely within the definition of manslaughter in the first degree. It was the killing of a human being, without a design to effect death, by the act of a person engaged in the perpetration of a crime or misdemeanor not amounting to a felony, in a case where such killing would have been murder at the common law; and being within the description of manslaughter it could not be murder. To be murder, a case must not only fall within one of the three subdivisions defining murder, but it must not fall within any of the definitions of manslaughter. If full effect be thus given to the words "unless it be manslaughter," in the preliminary part of the section defining murder, the second subdivision of that section will only be applicable to the class of cases above indicated. All others growing out of personal rencontres, and confined generally to two persons only, will be found to *Page 160 
fall within some of the definitions of manslaughter, and, of course, without the second definition of murder.
With this construction, crimes will also be properly graduated according to the intention of the revisors. If A attempts to cowhide B for having libeled him, and death accidentally ensues, the crime will be manslaughter in the first degree, because the assailant was engaged in committing an assault and battery only. But if A attempts to cut off the hand that wrote the libel, and death accidentally follow, the crime will be murder, because A was engaged in the commission of the felony of mayhem.
It is evident that the presiding judge, in charging the jury, had in his mind the idea that the case, to be murder, must not fall within the definition of manslaughter, for he made it a condition to bringing the case within the latter that the jury should find the injuries "were inflicted without provocation and not in the heat of passion." But he overlooked the definition of manslaughter that was alone applicable. He should have specially called their attention to the definition of manslaughter in the first degree, and if he alluded to the second subdivision of the definition of murder at all, he should have told them it could not fall within that, if it was a case of killing without a design to effect death while engaged in committing an assault and battery only. If there was a design to effect death, it would of course have fallen under the first subdivision of the definition of murder. If there was any question on that point, it should have been submitted to the jury to find whether it was murder under the first subdivision, or manslaughter in the first degree.
If this case was properly submitted to the jury as falling under the second subdivision of murder, so might a case be thus submitted where death was caused without design by a person engaged in a felonious assault upon the person killed, which is one of the cases expressly provided for in the third subdivision. But the construction I have put on the second *Page 161 
subdivision confines each subdivision to a distinct class of cases, and renders it entirely inapplicable to any other.
But it has been said (People v. Rector, 19 Wend., 608) that the 6th section of the statute defining manslaughter in the first degree is not applicable to a case where the party causing death without design is engaged in an assault and battery. I find no warrant for such a position. No exception of that offence is made in the statute. The language is, "the killing of a human being, without a design to effect death, by the act, procurement, or culpable negligence of any other, while such other is engaged: 1. In the perpetration of any crime or misdemeanor not amounting to a felony; or, 2. In an attempt to perpetrate any such crime or misdemeanor, in cases where such killing would be murder at the common law, shall be manslaughter in the first degree." This section is thus made expressly applicable to all crimes and misdemeanors not amounting to felony, and it is certain an assault and battery is one. The statute nowhere confines this section and the third subdivision of the section defining murder to other offences than those of intentional violence.
It is said that this plain construction of the act would make every case murder, because being engaged in an assault, and death ensuing, it becomes the felony of manslaughter, and being engaged in such felony, and death ensuing, it is murder. But it leads legitimately to no such result. The intent regulates the crime, unless otherwise provided. If the party intends an assault and battery, and death ensues without design, he is guilty of manslaughter. If he intends a mayhem or other felony to the person, and death ensues without design, it is murder. The law makes a person responsible for consequences not designed, in proportion to the grade of offence designed. This construction supposes an attempt, coolly and deliberately made, to commit a battery, and the offence of unintentionally causing death in such a case is the first degree of manslaughter. If there is the excuse that the act was done in the heat of passion, *Page 162 
though in a cruel or unusual manner or with a dangerous weapon, it is mitigated by the 10th and 12th sections to manslaughter in the second degree; and if done in the heat of passion, but not in a cruel or unusual manner, and not with a dangerous weapon, it is reduced by the 18th section to the fourth degree.
It may be that these respective crimes are not properly graduated, or punished in proportion to the moral delinquency; but the disproportion would be much greater if we held that death ensuing without design from the commission of a battery is not manslaughter in the first degree, within the description of the 6th section. With such a construction, and with a construction of the second subdivision of the definition of murder like that adopted at the trial, the question for the jury would not be whether the crime was murder or manslaughter in the first degree, but it would be whether it was murder or manslaughter in one of the lower degrees, thus making a leap from murder to manslaughter in the fourth degree; from a crime punishable with death, to one punishable in a county jail, with but a shade of difference between them. The very case before us falls at once to manslaughter in the fourth degree, if excluded by such a construction from the first degree.
It is objected that, if my construction of the first degree of manslaughter is correct, it would cover every other degree of manslaughter, for in every case provided for in the lower degrees there is also an assault and battery, and death ensues. I answer, the general description in the first degree cannot be considered as applicable to cases particularly described in the lower degrees. The first degree gives the general description; the lower degrees the exceptions, as where the act is done in the heat of passion, c. It is far more consistent to hold that the description in the first degree does not apply to cases described in the second and third degrees, than to hold it is not applicable to any case of assault and battery where death ensues. There is much *Page 163 
less violence done to the language of the section by my construction than by that against which I contend. There is reason in holding that the first section, being in general terms, is not applicable to cases specially described. Though within the general language, it may well be supposed the legislature did not intend to include them, because they are provided for specially in other sections. But it seems to me it is refusing obedience to the statute, to say that it is not intended to be applied to any case of assault and battery, when no exception of that offence is made.
But whatever may be the true construction of the 6th section, defining manslaughter in the first degree, I am clearly of the opinion that the court below erred in attempting to bring the case within the second subdivision of the section defining murder. The offence was either murder by design, under the first subdivision, or manslaughter in some degree.
If I were sitting in the oyer and terminer, and perhaps if sitting in the supreme court, I should feel bound by the opinions expressed on these points by the learned judges who constituted a majority of the court in deciding the Rector case. But in this court, where this question has not been decided, and where we are bound by no such opinions expressed in an inferior tribunal, I think it is our duty to settle the construction of these sections of the statute, by giving to them the effect which must have been originally intended, and thereby placing the different statutory provisions more in harmony with each other.
My conclusion is, therefore, that the court of oyer and terminer erred in its charge to the jury, and that the judgment of that court and of the supreme court should be reversed.
EDWARDS, ALLEN and JOHNSON, Js., concurred.
GARDINER, Ch. J., and RUGGLES, J., dissented.
Conviction reversed and new trial ordered. *Page 164