# Court of Appeals.

April 11, 1893.

## PEOPLE v. JOHN L. OSMOND.

(51 St. Rep. 727; 138 N. Y. 80.)

### 1. Indictment—Murder.

An indictment for murder in the common law form is proper, and under it the people must prove any case which amounts to murder under the statute, and if the proof does not bring the case within some one of the statute definitions of murder, it is the duty of the court to give proper instructions to that effect to the jury, and, unless it appears that the court has failed so to do upon request, the appellate court will presume that the proper instructions were given.

2. Evidence—Expert.

It is error for a physican to testify as to whether the form of insanity, described by the defendant in a trial for murder, is, or is not, known to the medical profession.

3. Same—Homicide.

Evidence, tending to show that defendant's wife and a third party were maintaining illicit relations, is not admissible upon the trial of an indictment for murder, where the defendant was ignorant of it.

4. Homicide—Proof.

The evidence, in this case, was held to show a cool and deliberate murder of his wife by defendant.

Appeal from judgment of New York oyer and terminer, convicting defendant of the crime of murder in the first degree.

Stephen C. Baldwin, for appellant.

Henry B. B. Stapler, for respondents.

PECKHAM, J.—Examining this record with reference to the statute of 1887, chapter 393, for the purpose of determining whether the verdict was against the weight of evidence, or against law, or whether justice requires a new trial, we are entirely clear that no new trial should be awarded on any ground mentioned in this statute.

The evidence showed a cool and deliberate murder of the wife of the defendant, and at the same moment the shooting and killing of another person who was then with her.

The defense set up was the insanity of the defendant at the very moment of the killing, or if not insane that his mind was then in such a weak condition as to have been overcome, and that he was incapable of forming an intent to commit murder, and, therefore, his crime, if anything, was a lesser offense.

A careful examination of the whole evidence leaves no room for doubt that there was an utter absence of testimony which even tended to show the alleged insanity or weakness of mind of the defendant. The evidence of the defendant himself leaves no room for doubt that there was no insanity about him. It is true that he swears that just prior to the firing of the pistol his

mind suddenly left him. He remembers with distinctness all that took place at the interview in which the killing occurred up to the moment when he saw Burchell "nudge his wife's knee," and from that time he says that during several hours and at intervals his mind was a blank, except that he heard a shot before Burchell struck him, and that the pistol went off toward the corner where Burchell was shot. There is no pretense of shooting other than his own.

His whole evidence shows, if it be true, a full and long-acquired knowledge of his wife's improper relations with Burchell, and with such knowledge a failure for months to make even an attempt to punish Burchell or his wife. His own account showed a continued association with his wife and with Burchell after this discovery, although, as he says, he was constantly complaining of it. He continued to live in the same rooms with his wife, the rooms themselves being part of the house occupied and owned by Burchell; the defendant, his wife and Burchell went on excursions, and Burchell paid the expenses with defendant's acquiescence, and all this was long subsequent to the time when, as the defendant says, he surprised his wife and Burchell in bed together. It thus appears there was no such case as a husband suddenly confronted with proofs of his wife's infidelity, but a full and clear knowledge of it for months before the killing and an intimate and daily association with both the guilty parties. The evidence of his brother and father, and stepmother only shows, if believed, that the defendant was somewhat nervous, irritable and excited over the behavior of his wife. Upon the merits there can be no rational doubt that the jury came to a correct conclusion.

We think it unprofitable to notice in detail all the objections which were argued here and upon which a new trial is asked. We have carefully reviewed them all, and do not think they call for specific mention further than we shall now give.

The defendant excepted to that portion of the charge where the court instructed the jury that if the defendant "intended to kill Burchell and killed his wife, he is just as much guilty of murder as if he intended to kill her, because it is the killing of a human being with a deliberate and premeditated design to effect the death of the person killed or of another person, so that if he

intended and fired at Burchell and killed her, intending to kill Burchell, with this premeditation and deliberation, then he is guilty under the statute, and it is your duty to say so." The counsel for the defendant excepted, and asked the court to charge the contrary, as the indictment charged the defendant specifically and only with the intent to murder his wife.

The indictment in this case is in the common law form, and does not charge the killing to have been done in the statutory language, "from a deliberate and premeditated design to effect the death" of Mary Osmond. It charges that the defendant killed her "willfully, feloniously and of his malice afore-thought," and it contains no charge that while intending to kill another the defendant killed his wife. Ever since the adoption of the Revised Statutes it has been held, without interruption, that an indictment for murder in the common law form was proper, and that under it the People might prove any case which amounted to murder under the statute, and if the proof did not bring the case within some one of the statutory definitions of murder, it was the duty of the court to give proper instructions to that effect to the jury, and, unless it appeared that the court has failed so to do upon request, the appellate court would presume that the proper instructions were given. Fitzgerold v. People, 37 N. Y. 413, citing People v. Enoch, 13 Wend. 159, and People v. White, 24 id. 520; People v. Conroy, 97 N. Y. 62; People v. Giblin, 115 id. 196; 24 St. Rep. 529. Under this indictment it was, therefore, proper to prove any facts which would show the defendant guilty of murder as defined in any portion of the statute.

Another answer might be made, that the record is barren of any evidence tending in the direction of showing that the defendant might have killed his wife while intending to kill Burchell. The evidence of the defendant simply is that he has no recollection whatever of the affair, while the evidence of the sister of the deceased wife is clear and unambiguous on this point. There was no error in this portion of the charge.

The defendant's counsel also claims error in the charge as to the burden of proof in cases of insanity. Whatever of error existed in the original charge was promptly cured when the attention of the learned judge was called to the subject, and he

then charged the jury upon that question in a manner which is in accord with the decisions of this court.

The general fault found with the charge seems to be that it bore heavily against the defendant in speaking of and in referring to the evidence. We have read with great care the whole of the charge, and we are unable to agree that it was in any way an unfair or improper presentation of the case. It gave the jury a fair review of the material evidence in the case, and let them understand that the facts were exclusively for them to decide. This was all that the defendant was entitled to. There were not errors as to the law which had not been fully and plainly corrected before the jury left the court room.

One or two questions in regard to the admission of evidence arose on the trial. The district attorney asked a medical witness called by him these questions: "Q. Now I will ask you, Doctor, if you have been sitting here and heard the defendant's testimony; yes or no? A. Yes. Q. Is there any known form of insanity to the medical profession where the mind at fits comes, and then there is a blank and it goes?" The question was objected to and admitted on the ground that it was a hypothetical question, and the answer given by the witness was, "I do not know of any such form."

I think the question was perfectly proper. It called for a fact, whether there was any form of insanity such as the district attorney described known to the medical profession. It was not of a nature which made hypothesis necessary. The question whether the witness had been sitting in court and heard defendant's evidence was wholly immaterial, for the question subsequently put did not call upon the witness to give any opinion as to the evidence which he had heard, nor was there any joining of the first as a part of the second question. The first question was harmless and the second was correct. The fact itself which was asked about was presented to the mind of the witness, and he was asked whether there was such a form of insanity known to the medical profession. This was proper. His answer was also responsive and properly received.

Again, the counsel for the defendant claims evidence should have been permitted, even though the defendant was ignorant of it, which tended to show the wife and Burchell were maintain-

ing illicit relations.    Everything known by others and which was communicated to defendant the court allowed to come in for the purpose of bearing upon the state and strength of mind of defendant at the time of the killing.    Any particular fact of which defendant was ignorant could have had no effect upon his mind, and was inadmissible.    Most of the material facts bearing upon the relations existing between the wife and Burchell which were known to others were also shown to have been known to defendant.    They were in reality not controverted or disputed.    The further fact that they had been found in bed together was only known by defendant, and he testified to it without objection.    The defendant did, in truth, obtain the benefit of everything that was known as to the relations between his wife and Burchell.    In strictness, however, evidence of which he was ignorant was inadmissible on this subject.    The principle is not the same as that decided in Stokes v. People, 53 N. Y. 164.

There the question was in regard to the character of the encounter which took place between the parties when the shooting was done; was it done by Stokes in self-defense, or was he the aggressor?    It was held competent to prove the fact that the deceased had himself made violent threats against Stokes shortly before, even though those threats had not been communicated to defendant.    This was upon the ground that the jury might consider the fact in determining the character of the encounter between the parties.    But how can evidence of acts of infidelity, or of acts which tended to prove infidelity on the part of the wife, in any degree tend to show the state of mind of the defendant upon this subject, if such evidence had not been known or repeated to him?

We entertain no doubt of the correctness of the ruling of the court below in this case.

The evidence on the cross-examination of the brother, as to whether he would regard his actions as irrational if he were nervous or irritable after divorce papers had been served upon him, was proper enough, although I think wholly unimportant.    It tended to characterize and develop the weight to be given the evidence of the witness on his direct examination.    These are all the questions upon which we deem it appropriate to specially re-

mark.   The whole case has been carefully reviewed both upon the merits and upon the legal questions presented by the record.

We think the defendant has been fairly tried and properly convicted and the judgment should, therefore, be affirmed.

Judgment affirmed.

All concur.