THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GUY NICHOLS, Appellant.

**Murder — conviction of defendant for murder committed by an accomplice while attempting to rob the deceased — when evidence insufficient to show that defendant abandoned the conspiracy to rob the deceased before the fatal shot was fired by his accomplice — refusal of court to charge that defendant might be convicted of burglary or robbery not error — sufficiency of indictment.**

1. Defendant has been convicted of murder in the first degree under an indictment which charged that he and two others " willfully, feloniously and of malice aforethought shot and killed " the deceased " with a revolver." The evidence shows that defendant and one of his accomplices, in accordance with their conspiracy to rob the deceased, entered his store, while the other accomplice remained outside; that the accomplice in the store attempted to secure the money from the

cash register from which deceased was making change; that deceased in the attempt to protect his property grabbed such accomplice and in the course of the struggle which ensued the deceased was shot and killed by such accomplice. Defendant testified that before the shooting of deceased, he fired a shot to scare the deceased and his accomplice and called to the latter to get out of the store, and then ran out, leaving his accomplice in the store. After running out defendant and his two accomplices went back to the room from which they had started, where defendant changed his clothes and received a dollar, unaccounted for except as part of the proceeds of the robbery, and returned to the navy from which he was a deserter. *Held*, that the facts constituting defendant's alleged abandonment of the conspiracy to rob deceased would not, under the most favorable aspect of the evidence, permit a jury to say that he had effected any such retirement from the criminal plan, to which he was a party, before the shot was fired which killed the deceased.

2. It was not error for the trial court to refuse to instruct the jury that defendant might be convicted of burglary or robbery, since the commission of the crime of burglary or robbery was not "necessarily included" in the crime of murder with which defendant was charged. (Code Crim. Pro. § 445.) (*People* v. *Hüter*, 184 N. Y. 237, 244, followed.)

3. The indictment was sufficient in form when it simply accused defendant of having killed the deceased "willfully, feloniously and with malice aforethought." While it was necessary, under this indictment, to prove such malice and willful and felonious conduct, this necessity was satisfied in accordance with the provision of the statute (Penal Law, § 1044) by evidence showing that the homicide occurred while the defendant was engaged in the commission of another felony. (*People* v. *Giblin*, 115 N. Y. 196, 198; *People* v. *Schermerhorn*, 203 N. Y. 57, 72; *People* v. *Conroy*, 97 N. Y. 62, 68, 69; *People* v. *Enoch*, 13 Wend. 159, 174, followed.)

(Argued November 29, 1920; decided January 11, 1921.)

APPEAL from a judgment of the Supreme Court rendered May 24, 1920, at a Trial Term for the county of Kings upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*William Paul Allen* and *Raymond Malone* for appellant. The trial court erred in refusing to charge that the jury might convict of burglary or robbery. (*People* v. *Giblin*,

115 N. Y. 196; *People* v. *Mayer,* 162 N. Y. 357; *People* v. *Sullivan,* 173 N. Y. 122; *People* v. *Schermerhorn,* 203 N. Y. 57; *People* v. *Schliemen,* 197 N. Y. 385; *People* v. *Monat,* 200 N. Y. 308; *People* v. *Chapman,* 224 N. Y. 463; *People* v. *Conroy,* 97 N. Y. 62.)    The refusal to submit the question of abandonment to the jury was error. (*People* v. *Chapman,* 224 N. Y. 463.)

*Harry E. Lewis, District Attorney* (*Ralph E. Hemstreet* and *Harry G. Anderson* of counsel), for respondent.    It was not error for the court to refuse to instruct the jury that they might find the defendant guilty of burglary or robbery. (*Dedieu* v. *People,* 22 N. Y. 178; *Meeghan* v. *People,* 104 N. Y. 529; *Buel* v. *People,* 78 N. Y. 492; *People* v. *Hüter,* 184 N. Y. 237.)    The trial court did not commit error in refusing to submit the question of abandonment to the jury. (*People* v. *Chapman,* 224 N. Y. 463; *People* v. *Friedman,* 205 N. Y. 161; *People* v. *Vasquez,* 49 Cal. 560; *State* v. *Gray,* 55 Kan. 135; McClain on Crim. Law, § 198; *State* v. *McCahill,* 72 Iowa, 111; *Jones* v. *State,* 14 Ohio C. C. 35; *State* v. *Allen,* 47 Conn. 121; *Rex* v. *Edmeads,* 3 Car. & P. 390; Wharton on Homicide [3d ed.], 665; 1 Whart. Crim. Law [11th ed.] 296.)

HISCOCK, Ch. J.    The defendant has been convicted of murder in the first degree.    The indictment charged that he and two others " in the County of Kings, willfully, feloniously and of malice aforethought, shot and killed Samuel Wolchock with a revolver."    The theory of the murder was that while defendant and his co-defendants were engaged in robbing Wolchock one of the latter shot and killed him.    The substantial facts establishing the crime were not only undisputed but evidence of them was largely furnished by the defendant himself who was tried separately and took the stand in his own behalf.

The defendant, who theretofore seems to have been a young man of law-abiding character, at the time of the

homicide had become a deserter in Brooklyn from the United States navy through overstaying a shore leave, and he was without any money. Under these circumstances he unfortunately got to drinking and came into relations with the other indicted persons, Walker and Auth, and they entered upon a program of robbery. After other unsuccessful attempts they formed a plan to rob deceased, who kept a small store in the city of Brooklyn. In accordance with their plan Auth remained outside while Walker and defendant entered the store, the latter remaining near the door and the former proceeding to the counter and making a small purchase. As Wolchock turned to his cash drawer to make change on this purchase defendant pulled down the curtain on the front entrance and Walker attempted to secure the money from the drawer. The deceased, however, in the attempt to protect his property grabbed Walker and in the course of the struggle which ensued was shot and killed. Defendant testified that when the deceased turned to the cash register for the purpose of making change Walker pulled his revolver and told him to put up his hands and that he (defendant) " pulled the blind down then that is on the door, and Walker walked behind the counter. I had also pulled my gun out, too, and he started to get the money out of the cash register, and this man who owned the store — he jumped and grabbed Walker and he started wrestling, struggling, so I fired a shot in order to scare this man and scare Walker to come on out, and I hollered for him to come on and get out. * * * I says, ' Come on, Walker, get out of here,' " and defendant ran out leaving Walker in the store. After running out, defendant joined Auth who gave him an overcoat for purposes of disguise and they then went back to the rooms from which they had started, where defendant changed his clothes and received a dollar, unaccounted for except as part of the proceeds of the robbery, and left and returned to the navy.

It is argued that two substantial errors were committed by the court in the course of the trial.

The first of these is the one alleged to have occurred when the court refused to instruct the jury that the defendant might be convicted of burglary or robbery. The allegation of this error is based upon section 445 of the Code of Criminal Procedure, some reference also being made to section 444. Section 444 provides: "Upon an indictment for a crime consisting of different degrees the jury may find the defendant not guilty of the degree charged in the indictment, and guilty of any degree inferior thereto, or an attempt to commit the crime," etc. Section 445 provides: " In all other cases, the defendant may be found guilty of any crime, the commission of which is necessarily included in that with which he is charged in the indictment."

The argument is that since defendant has been convicted of murder in the first degree under section 1044 of the Penal Law because the deceased was killed without excuse or justification " without a design to effect death, by a person engaged in the commission of, or in an attempt to commit a felony, either upon or affecting the person killed or otherwise," the felony in the commission of which defendant was engaged was a necessary ingredient of the crime of murder for which he was indicted and, therefore, under section 445 he might be convicted of such felony, which was burglary or robbery. We think there is no foundation for this argument and that it entirely misinterprets the part which evidence of engagement in the commission of another felony performs in establishing the crime of murder, for which the defendant was indicted and of which he has been convicted. The commission of the crime of burglary or robbery was not " necessarily included " in the crime of murder with which defendant was charged. It was not included therein at all in the sense in which defendant argues. The crimes of murder

15

and burglary are substantively and generically entirely separate and disconnected offenses. In fact, this court has said: " In order, therefore, to constitute murder in the first degree by the unintentional killing of another while engaged in the commission of a felony, we think that while the violence may constitute a part of the homicide, yet the other elements constituting the felony in which he is engaged must be so distinct from that of the homicide as not to be an ingredient of the homicide, indictable therewith or convictable thereunder." (*People* v. *Hüter*, 184 N. Y. 237, 244.)

The purpose of proving participation in the commission of another felony which leads up to and results in the homicide is entirely different than the one suggested by the defendant. There can be no murder without evidence of malice and of a felonious intent and a depraved mind. The indictment was sufficient in form when it simply accused defendant of having killed the deceased " willfully, feloniously and with malice aforethought." (*People* v. *Giblin*, 115 N. Y. 196, 198; *People* v. *Schermerhorn*, 203 N. Y. 57, 72.) On the trial it was necessary to prove such malice and willful and felonious conduct and this necessity was satisfied in accordance with the provision of the statute by showing that the homicide occurred while the defendant was engaged in the commission of another felony. (*People* v. *Conroy*, 97 N. Y. 62, 68, 69; *People* v. *Giblin*, 115 N. Y. 196.) The theory upon which under the statute evidence of engagement in the commission of another felony supplies proof of the necessary malice and felonious intent upon which to found a conviction of murder in the first degree is well set forth in *People* v. *Enoch* (13 Wend. 159, 174) where it is said: " Malice was implied in many cases at the common law, where it was evident that the offenders could not have had any intention of destroying human life, merely on the ground that the homicide was committed while the person who did the act was engaged in the commission of some other

felony, or in an attempt to perpetrate some offense of that grade. Every felony, by the common law, involved a forfeiture of the lands or goods of the offender, upon a conviction of the offense; and nearly all offenses. of that grade were punishable with death, with or without benefit of clergy. In such cases, therefore, the malicious and premeditated intent to perpetrate one kind of felony, was, by implication of law, transferred from such offense to the homicide which was actually committed, so as to make the latter offense a killing with malice aforethought, contrary. to the real fact of the case as it appeared in evidence."

This view is supported by authorities in other states, sometimes involving the consideration of statutes largely similar to our own. (*Ex parte Dela*, 25 Nev. 346; *State v. Meyers*, 99 Mo. 113; *State* v. *Johnson*, 72 Iowa, 400; *Titus* v. *State*, 49 N. J. Law, 36.)

The cases of *People* v. *Miller* (143 App. Div. 251) and *People* v. *Colburn* (162 App. Div. 651) do not sustain any other view or support the contention of the defendant. The latter case without any discussion adopts as its basis and authority the *Miller* case and, therefore, we may confine our brief review to the latter case.

In that case the attempt was made to convict the defendant of the crime of burglary in the third degree and it was held that the court had erred in refusing to charge that he might be convicted of the lesser offense of entering a building with intent to commit a felony, larceny or malicious mischief. This conclusion was based upon the theory that the indictment had fully set forth all of the facts necessary to establish the crime of burglary in the third degree and part of these facts were sufficient to · establish the lesser offense, and the conclusion was that if the prosecution failed to prove all of the facts necessary· to constitute· the offense of the higher degree it might still ask conviction upon the remaining facts fully set forth in the indictment establishing commission of the

lesser offense. If we accept that decision in its full scope it in no way impairs the strength of the conclusion which we have reached in this case. As has already been pointed out, the indictment charged in common-law form the commission of the crime of murder. No reference therein was made to the crime of burglary or robbery and no facts were alleged which would establish the commission of either of those crimes. On the theory adopted by it the prosecution was limited under its indictment to proof of the crime of murder in the first degree and nothing else and it was permitted to introduce evidence of the commission of another crime under our statute as proof of one of the necessary elements in the crime charged in the indictment — malice and felonious and willful intent.

The other error alleged is that the trial court refused to submit to the jury the question whether defendant had not abandoned the criminal enterprise before the shot was fired which killed Wolchock. We think no error was committed.

Disregarding the rather adverse evidence furnished by defendant upon this subject that after running from the store he joined the other conspirator, returned to the rooms from which they had started and received a small amount of money which is not accounted for except as part of the proceeds of the robbery, and considering only the other and more favorable evidence, we feel entirely clear that there was no basis upon which could have rested a verdict that the defendant made timely abandonment of the criminal enterprise in which he had been a conceded participant.

The evidence relied upon has been briefly summarized. After defendant's co-conspirator, Walker, and the deceased had become actually engaged in a struggle defendant claims that he fired his revolver to scare them and called to Walker to " Come on and get out," and then ran off leaving Walker. He also testifies that Walker subsequently told him that when the struggle commenced " he

took his gun and felt around until he got it over his (the deceased's) heart and fired."

It thus appears that at the time when defendant claims he abandoned the criminal enterprise it had been carried forward to the point where murder was its immediate and natural, if not inevitable, result. The discharge of the shot was an incident in and part of the struggle which had already commenced. If we assume that Walker heard the call of defendant and that that call amounted to notice of an attempted abandonment there was no appreciable time between it and the homicide wherein the co-conspirator had an opportunity to consider and act upon the alleged abandonment of defendant. The struggle, the alleged call to Walker to come out and the fatal shot were really all parts of a single and brief transaction.

Whatever may be the other requirements of an effective abandonment of a criminal enterprise it is certain both as a matter of law and of common sense that there must be some appreciable interval between the alleged abandonment and the act from responsibility for which escape is sought. It must be possible for a jury to say that the accused had wholly and effectively detached himself from the criminal enterprise before the act with which he is charged is in the process of consummation or has become so inevitable that it cannot reasonably be stayed. The process of detachment must be such as to show not only a determination upon the part of the accused to go no farther but also such as to give his co-conspirators a reasonable opportunity, if they desire, to follow his example and refrain from further action before the act in question is committed. A conspirator cannot escape responsibility for an act which is the natural result of a criminal scheme which he has helped to devise and carry forward because as the result either of fear or even of a better motive he concludes to run away at the very instant when the act in question is about to be

committed and when the transaction which immediately begets it has actually been commenced, as in this case. While it may make no difference whether mere fear or actual repentance is the moving cause, one or the other must lead to an actual and effective retirement before the act in question has become so imminent that its avoidance is practically out of the question.

Defendant's alleged abandonment under the most favorable aspect of the evidence would not permit a jury to say that he had effected any such retirement from the criminal plan to which he was a party before the shot was fired which killed Wolchock. (*People* v. *Chapman*, 224 N. Y. 463; *State* v. *Forsha*, 190 Mo. 296, 331.)

Therefore, we conclude that no errors were committed and that the judgment of conviction should be affirmed.

HOGAN, CARDOZO, POUND, CRANE and ANDREWS, JJ., concur; MCLAUGHLIN, J., absent.

Judgment of conviction affirmed.