UNITED STATES of America, ex rel. Nathan JACKSON, Petitioner-Appellant,

v.

Harold W. FOLLETTE, Warden, Green Haven Correctional Facility, Respondent-Appellee.

No. 527, Docket 71–2142.

United States Court of Appeals, Second Circuit.

Submitted Feb. 28, 1972.

Decided June 23, 1972.

---

Daniel G. Collins, New York City, for petitioner-appellant.

Samuel A. Hirshowitz, First Asst. Atty. Gen., Hillel Hoffman, Asst. Atty. Gen. (Louis K. Lefkowitz, Atty. Gen. of State of New York), for respondent-appellee.

Before KAUFMAN, MANSFIELD and OAKES, Circuit Judges.

OAKES, Circuit Judge:

Nathan Jackson, of Jackson v. Denno [1] fame, now raises a difficult as well as important claim of double jeopardy.[2] In this appeal from Judge Can-

1. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

2. The double jeopardy provision of the fifth amendment to the Constitution is

nella's denial of his application for a writ of habeas corpus under 28 U.S.C. § 2241 et seq., petitioner also seeks to overturn his conviction by a "blue-ribbon jury" under the now repealed law of April 7, 1938, ch. 552, § 749–aa, N.Y. Judiciary Law, McKinney's Consol.Laws, c. 30, § 749–aa (repealed 1965), on constitutional grounds.

However much we might agree with the original dissent in Fay v. New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043 (1947) (5–4 decision), that case did uphold the New York special jury as not in violation of the equal protection or due process clauses. Two recent attacks in this circuit on the "blue-ribbon jury" have failed. United States ex rel. Torres v. Mancusi, 427 F.2d 168 (2d Cir.), cert. denied, 400 U.S. 952, 91 S. Ct. 252, 27 L.Ed.2d 259 (1970); United States ex rel. Fein v. Deegan, 410 F.2d 13, 22 (2d Cir.), cert. denied, 395 U.S. 935, 89 S.Ct. 1997, 23 L.Ed.2d 450 (1969). We are not about to overrule both the Supreme Court and two previous panels of this court. See also Vanderwyde v. Denno, 113 F.Supp. 918 (S.D.N.Y.1953), aff'd per curiam, 210 F.2d 105 (2d Cir.), cert. denied, 347 U.S. 949, 74 S.Ct. 646, 98 L.Ed. 1096 (1954).

To comprehend the double jeopardy claim, the full saga of petitioner's odyssey through the courts must be recounted. Jackson was convicted of the murder of a police officer on the street after an armed robbery in a Brooklyn hotel and was sentenced to death by County Judge Barshay of Kings County on November 28, 1960. At the trial the jury was presented with evidence, and the court instructed it, on both "common law" or premeditated[3] murder and felony murder, each of which was murder in the first degree under former N.Y. Penal Law §§ 1044(1), (2) (Penal Law of 1909) [now substantially revised as N.Y.Penal Law §§ 125.25(1), (3) (McKinney's Consol.Laws, c. 40, 1967)]. Without objection by appellant[4] the jury was also instructed that if it returned a verdict on one count it was to remain silent on the other. The conviction was for premeditated murder, and no verdict was rendered as to felony murder.

The conviction was affirmed by the New York Court of Appeals without opinion on July 7, 1961. 10 N.Y.2d 780, 212 N.Y.S.2d 621, 177 N.E.2d 59. A motion for reargument was denied on October 5, 1961, 10 N.Y.2d 885, 223 N.Y. S.2d 1027, 179 N.E.2d 717, but the remittitur was amended to show that the court had considered but rejected Jackson's arguments pertaining to the voluntariness of his confession. 10 N.Y.2d 816, 221 N.Y.S.2d 521, 178 N.E.2d 234. Certiorari was denied, 368 U.S. 949, 82 S. Ct. 390, 7 L.Ed.2d 344 (1961), as were a stay of execution, 82 S.Ct. 541, 7 L.Ed.2d 766 (1962), and a further motion for reargument, 11 N.Y.2d 798, 227 N.Y.S. 2d 1025, 181 N.E.2d 854.

Thereafter collateral attack by way of habeas corpus began. After defeats in the district court, 206 F.Supp. 759 (S.D. N.Y.1962), and in this court, 309 F.2d 573 (2d Cir. 1962), the landmark case of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) (5–4 decision), held unconstitutional the New York procedure permitting the jury to pass upon the voluntariness of a confession after hearing it read.[5] In doing

enforceable against the states through the fourteenth amendment, Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The *Benton* decision has retroactive effect, Ashe v. Swenson, 397 U.S. 436, 437 n. 1, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969), and thus is applicable to this case.

3. "Common law" murder, used from time to time by the parties and New York courts, is a misnomer, since a homicide perpetrated in the course of committing a felony was also murder at common law. *See* note 10 *infra*.

4. Jackson's trial counsel was "a lawyer of 50 years' trial experience in the criminal courts, including service on the bench. . . ." Jackson v. Denno, 378 U.S. 368, 423, 84 S.Ct. 1774, 1805, 12 L.Ed. 2d 908 (1964) (Clark, J., dissenting).

5. More accurately, this was the opinion of four of the prevailing majority. Mr. Jus-

so, the Court left it open to New York "to give Jackson a new trial if it so chooses," 378 U.S. at 395, 84 S.Ct. at 1790, but permitted the State in the alternative to furnish proof of the voluntariness of Jackson's confession in a hearing before the trial judge.

The State elected to retry Jackson without the use of the disputed confession. On Jackson's motion, with the State's consent, the New York Court of Appeals amended its remittitur, vacated its judgment and remanded the case to the Supreme Court, Kings County, for a new trial. People v. Jackson, 15 N.Y.2d 851, 257 N.Y.S.2d 958, 205 N.E.2d 877 (1965).

At the second trial the prosecution again introduced evidence pertaining to felony as well as to premeditated murder. Appellant promptly objected on double jeopardy grounds and preserved his objections in all respects, objecting to all portions of the charge relating to felony murder as well.[6] The charge was essentially as given at the first trial.

The rub is that the jury found Jackson guilty on the second trial of felony murder and remained silent on premeditated murder. He was accorded a hearing before that same jury and sentenced to death. This conviction and sentence were affirmed. People v. Jackson, 20 N.Y.2d 440, 285 N.Y.S.2d 8, 231 N.E.2d 722 (1967), cert. denied, 391 U.S. 928, 88 S.Ct. 1815, 20 L.Ed.2d 668 (1968). In rejecting Jackson's claim that he was subject to double jeopardy on the felony murder count and affirming the conviction unanimously, the New York Court of Appeals said that "[t]his court . . . has never directly decided whether felony murder and premeditated murder constitute a single offense or multiple offenses for the purposes of double jeop-

ardy." 20 N.Y.2d at 451, 285 N.Y.S.2d at 18, 231 N.E.2d at 730. The court went on to say that in Jackson's case the jury was charged and directed to bring in a verdict as if they constituted a single offense. The Court of Appeals then held that, because the trial judge in the first trial said the jury could render a verdict on only one charge, "[w]e cannot say that the jury's silence on the felony murder theory had the effect of acquitting Jackson of that theory . . . . Since the jury was instructed to render only one verdict, it had no reason to consider the felony murder charge once it found the defendant guilty of premeditated murder." Id. at 452, 285 N.Y.S.2d at 19, 231 N.E.2d at 730.

Governor Rockefeller commuted the sentence to life imprisonment before appellant brought his habeas corpus petition to the Southern District, which petition was denied in due course.

Appellant argues here, in line with the New York Court of Appeals' own suggestion that, because the original trial judge "instructed the jury that the order of consideration of the respective theories was entirely up to them," it was at least "possible that the jury considered felony murder first and acquitted him of that theory but under the single verdict charge the jury was not able to express an acquittal . . . ." Id. at 452, 285 N.Y.S.2d at 19, 231 N.E.2d at 730–731. More significantly, it is suggested here that there was exposure to jeopardy or to the "risk of conviction." See Fortas, J., dissenting in Cichos v. Indiana, 385 U.S. 76, 80–81, 87 S.Ct. 271, 17 L.Ed.2d 175 (1966). See also Chief Justice Burger for the Court in Price v. Georgia, 398 U.S. 323, 326, 90 S.Ct. 1757, 1759, 26 L.Ed.2d 300 (1970) ("The 'twice put in jeopardy' language of the Constitution

tice Black, agreeing that a new trial was required, dissented from that portion of the opinion permitting the trial judge to pass separately on voluntariness, saying that "such a fragmentizing process violates the spirit of the constitutional protection against double jeopardy, even if it does not infringe it technically." Jack-

son v. Denno, 378 U.S. 368, 410, 84 S.Ct. 1774, 1798, 12 L.Ed.2d 908 (1964).

6. The felony was the $56.50 robbery at gunpoint of the room clerk of the I.C.U. Hotel in Brooklyn. The murder was of Patrolman William Ramos, who happened onto the scene and was killed in an exchange of gunfire.

thus relates to a potential, *i. e.*, the risk that an accused for a second time will be convicted of the 'same offense' for which he was initially tried").

■ Appellant relies on Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), which held that, when a conviction for second degree murder is set aside, retrial for first degree murder is prohibited. This holding was based on two grounds: one, that the verdict of guilty of second degree murder is an "implicit acquittal," 355 U.S. at 190, 78 S.Ct. 221, on the charge of first degree murder;[7] and two, that "the jury was dismissed without returning any express verdict on that charge and without Green's consent . . . [even though] *it was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so.*" 355 U.S. at 191, 78 S. Ct. at 225 (emphasis supplied). Appellant argues that, even if his conviction for premeditated murder were not an "implicit acquittal" of the charge of felony murder, his first jury was dismissed without his consent after having been given a "full opportunity to return a verdict" on that charge without any circumstances appearing that prevented it from doing so. This, of course, is the language of Mr. Justice Black in *Green,* utilized by Mr. Justice Fortas in his dissent to Cichos v. Indiana, *supra.* The majority in *Cichos* dismissed the writ as improvidently granted where the Indiana courts had permitted a retrial on counts of involuntary manslaughter and reckless homicide *after conviction of the latter* at the first trial was set aside on appeal.

*Cichos,* unlike our case, involved the same verdict on the retrial as on the first trial. The Court pointed out that under Indiana law the two crimes involved "proof of the same elements," 385 U.S. at 78, 87 S.Ct. 271, but with different penalties, and relied upon the Indiana practice—similar to New York's here—of instructing the jury to return a verdict on only one of the charges. 385 U. S. at 79–80, 87 S.Ct. 271. Interestingly, Mr. Justice Black, who wrote the *Green* opinion, concurred in the Court's opinion in *Cichos.* 385 U.S. at 80, 87 S.Ct. 271.

Price v. Georgia, 398 U.S. 323, 90 S. Ct. 1757, 26 L.Ed.2d 300 (1970), denied the power of a state to retry an accused for murder after an earlier guilty verdict on the lesser-included offense of voluntary manslaughter had been set aside for trial error. The Court followed *Green,* saying, however, at 398 U.S. 326–327, 90 S.Ct. 1759 (emphasis supplied):

> The continuing jeopardy principle necessarily is applicable to this case. Petitioner sought and obtained the reversal of his initial conviction for voluntary manslaughter by taking an appeal. Accordingly, *no aspect of the bar on double jeopardy prevented his retrial for that crime.* However, the first verdict, limited as it was to the lesser included offense, required that the retrial be limited to that lesser offense. Such a result flows inescapably from the Constitution's emphasis *on a risk of conviction* and the Constitution's explication in prior decisions of this Court.

■ While undoubtedly petitioner was exposed to "a risk of conviction" for felony murder on his first trial, the fact is that he was convicted of a form of first degree murder—premeditated—and the question we have is whether retrial for the crime of first degree murder is barred. In no sense can it be said that felony murder *is a lesser-included offense.* Neither the "prior decisions" of the Supreme Court nor the Constitution's language help us particularly in determin-

---

7. Technically, silence of the jury is not equivocal to an acquittal; it is an inability of the jury to agree unanimously on a verdict. *See* Frankfurter, J., dissenting in Green v. United States, 355 U.S. 184, 214, 58 S.Ct. 149, 82 L.Ed. 288 (1957).

ing whether the "continuing jeopardy"[8] the Court talks about refers to the crime of first degree murder or is more narrowly limited to the particular form of first degree murder New York calls premeditated murder.

The explanatory footnote in *Price, supra,* 398 U.S. at 329 n. 4, 90 S.Ct. at 1761, helps us some, perhaps, in saying that "[a]fter Kepner [Kepner v. United States, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904)] and *Green,* the continuing jeopardy principle appears to rest on an amalgam of interests—*e.g.,* fairness to society, lack of finality, and limited waiver, among others." The Court's opinion, however, rather opaquely cites the New York Court of Appeals opinion in our case, People v. Jackson, 20 N.Y.2d 440, 285 N.Y.S.2d 8, 231 N.E.2d 722 (1967), as footnote 5 in the quote, "[T]his Court has consistently refused to rule that jeopardy for an offense continues after an acquittal, whether that acquittal is express or implied by a conviction on a lesser included offense when the jury was given a full opportunity to return a verdict on the greater charge." *Price, supra,* 398 U.S. at 329, 90 S.Ct. at 1761. Does the *Jackson* citation, preceded by a "See," mean that the New York trial judge's instructions denied the jury its "full opportunity" on each count? This is arguable, but in any event a rather light peg on which to hang the cloth of decision. This is especially true when we understand *Price's* holding, 398 U.S. at 331–332, 90 S.Ct. 1757, that the second jeopardy was not harmless error even though, unlike *Green,* the conviction on the second trial was for the lesser offense. The Court relied on our own United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844 (2d Cir. 1965), cert. denied, Mancusi v. Hetenyi; 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966), in pointing out that the jury may have compromised in reaching its verdict on the lesser charge. Here it could conceivably be argued that the jury on retrial, faced with the two charges of first degree murder, compromised in finding Jackson guilty of one.

Carrying petitioner's argument one step further, United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), not cited to us by either party, held that jeopardy attached when a jury was impaneled and that, while the fifth amendment is not to be woodenly or mechanically construed, reprosecution after a mistrial would not be permitted where, without the defendant's consent,

8. The "continuing jeopardy" theory was advanced by Mr. Justice Holmes in his dissent in Kepner v. United States, 195 U.S. 100, 134–136, 24 S.Ct. 797, 49 L.Ed. 114 (1904). There he rather devastatingly criticized the so-called "waiver" theory adhered to by many courts, *see* Trono v. United States, 199 U.S. 521, 26 S.Ct. 121, 50 L.Ed. 292 (1905), as having the fatal flaw of inconsistency with retrial after any mistrial, as in United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824) (hung jury). The "theory of continuing jeopardy has never outwardly been adhered to by any other Justice of this Court," according to Green v. United States, 355 U.S. 184, 197, 78 S.Ct. 221, 229, 2 L.Ed.2d 199 (1957) (footnote omitted), but Justice Cardozo hinted his support in Palko v. Connecticut, 302 U.S. 319, 323, 58 S.Ct. 149, 151, 82 L.Ed. 288 (1937), overruled, Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), with the phrase "if double jeopardy it must be called," and it was precisely in this connection that he referred again to his own gem, "[t]he tyranny of labels." *Id.* Holmes' view did receive support in perhaps the leading law review article on the subject as comporting "with what may be the most satisfying analysis of the double jeopardy protection in general." Mayers & Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv.L. Rev. 1, 7 (1960). Holmes was vindicated by *Green, supra,* which expressly rejected the "waiver" theory, 355 U.S. at 191–198, 78 S.Ct. 221, 2 L.Ed.2d 199, and his turn of phrase, if not his concept, was adopted by a unanimous Court in Price v. Georgia, 398 U.S. 323, 326–327, 329, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). But note 4 therein, 398 U.S. at 329, 90 S.Ct. 1757, cautions against the tyranny of even a Holmes label by redefining "continuing jeopardy" in terms of competing interests. See text of this opinion, *infra* at 1045.

the trial judge declared a mistrial only to enable prosecution witnesses to consult with their attorneys. 400 U.S. at 479–487, 91 S.Ct. 547. In this holding, the Court, 400 U.S. at 481, 91 S.Ct. at 555, reiterated the test of United States v. Perez, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824), that before a mistrial may be declared without reprosecution being barred as double jeopardy, "there [must be] a manifest necessity for the act [of declaring a mistrial], or the ends of public justice would otherwise be defeated." *See also* Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949) (no double jeopardy bar to second court-martial when first court-martial discharged due to tactical necessity in the field). Petitioner might argue here that there was no "manifest necessity" at least as far as he was concerned, that the judge in each of his trials erred in permitting the charge on both counts to go to the jury, and that the prosecutor should not have attempted to retry him on the felony murder charge, regardless of whether the proof of premeditation was thin.

■ *Jorn* involved retrial on the same charge after the *court* had declared a mistrial. Here, however, there was a conviction followed by an appeal and a reversal (on habeas corpus, to be sure). Our question is whether the fifth amendment forbids retrial on both counts; it cannot be argued that retrial on the premeditated murder count would be impermissible. *Jorn* neither adds to nor subtracts from the problem we face: if being "exposed to jeopardy" in Mr. Justice Fortas' words [9] is the sole test, may there be no further exposure to the same charge of first degree murder cast in two of its forms (premeditated and felony) when there is a conviction in one (premeditated) followed by a reversal?

An attempt to analyze the law of murder in New York from an historical perspective to determine whether this case is closer to *Cichos* than to *Green* and *Price*, while essential perhaps, is not altogether fruitful, but such an attempt may be helpful in deciding whether there is here involved "one continuing jeopardy."

Our historical analysis commences with Blackstone, who made the point that, while the element of malice is express when one "with a sedate deliberate mind and formed design" kills another, malice is supplied by implication in a killing without design "if one intends to do another felony." [10] At common

---

9. Cichos v. Indiana, 385 U.S. 76, 81, 87 S.Ct. 271, 17 L.Ed.2d 175 (1966) (Fortas, J., dissenting).

10. 4 W. Blackstone, Commentaries *199–200. Blackstone's formulation is worth quoting at length:

Express malice is when one, with a sedate deliberate mind and formed design, doth kill another: which formed design is evidenced by external circumstances discovering that inward intention; as laying in wait, antecedent menaces, former grudges, and concerted schemes to do him some bodily harm. This takes in the case of deliberate duelling . . . . Also, if even upon a sudden provocation one beats another in a cruel and unusual manner so that he dies, though he did not intend his death, yet he is guilty of murder by express malice. . . . Neither shall he be guilty of a less crime who kills another in consequence of such a wilful act as shows him to be an enemy to all mankind in general; as going de-

liberately, and with an intent to do mischief, upon a horse used to strike, or cooly discharging a gun among a multitude of people . . . . .

Also in many cases where no malice is expressed the law will imply it, as, where a man wilfully poisons another: in such a deliberate act the law presumes malice, though no particular enmity can be proved . . . . . In like manner, if one kills an officer of justice, either civil or criminal, in the execution of his duty, or any of his assistants endeavoring to conserve the peace, or any private person endeavoring to suppress an affray or apprehend a felon, knowing his authority or the intention with which he interposes, the law will imply malice, and the killer shall be guilty of murder. *And if one intends to do another felony, and undesignedly kills a man, this is also murder.* Thus, if one shoots at A. and misses *him* [emphasis original], but kills B., this is murder, because of the

law the number of criminal offenses was small, each offense was based upon the underlying factual transaction rather than a legal theory, thus barring efforts at second prosecutions, at least until The King v. Vandercomb & Abbott, 2 Leach 708, 168 Eng.Rep. 455 (Ex. 1796), and an indictment could charge only a simple felony. *See* Note, Statutory Implementation of Double Jeopardy Clauses: New Life for a Moribund Constitutional Guarantee, 65 Yale L.J. 339, 341–344 (1956). Apparently it was not until 1794 in this country that murder was divided by statute into degrees, and even then, in the first such statute, enacted April 22, 1794, in Pennsylvania, first degree murder was defined as " . . . all murder, which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery or burglary. . . . " 4 Journal of the Senate 242 (Pa. 1794), quoted in Keedy, A Problem of First Degree Murder: Fisher v. United States, 99 U.Pa. L.Rev. 267 (1950).

In a common law indictment for murder in New York, either premeditated or felony murder was provable. People v. Enoch, 13 Wend. 159 (N.Y.Ct. for Correction of Errors 1834); 11 Syracuse L.Rev. 290, 291 (1960). To be sure, a unanimous Court of Appeals recognized that the concept of felony murder as murder in the first degree rests on "the legal fiction of transferred intent." People v. Wood, 8 N.Y.2d 48, 51, 201 N.Y.S.2d 328, 331, 167 N.E.2d 736, 738 (1960). The New York statute under which appellant was convicted, former N.Y.Penal Law § 1044, defined first degree murder, including felony murder, along the Blackstonian common law lines. This statute was construed for the first time in the instant case by the New York Court of Appeals, as in the trial court, to mean, in effect, that pre-

meditated and felony murder constitute but a single offense (despite the court's statement that it was not deciding that issue). People v. Jackson, *supra*, 20 N.Y.2d at 451–452, 285 N.Y.S.2d at 18–19, 231 N.E.2d at 730–731 (distinguishing *Green* as a two-offense case).

The problem with this historical analysis, however, is that there are truly distinct evidentiary requirements necessary to prove premeditated murder and felony murder under the statute. Despite those different requirements the facts in this particular case justified a charge of either, at least under the broad reach of the former Penal Law as construed by the New York courts, and no evidence admissible on one charge was inadmissible on the other. Thus, even though Jackson engaged in a gunfight with a police officer after leaving the hotel, a fight which surely could not have involved any great degree of "premeditation" and "deliberation," and while under the law of New York there should be "some reflection and some thought that precedes the blow," People v. Hawkins, 109 N.Y. 408, 411, 17 N.E. 371, 373 (1888) (quoting with approval the trial judge's instruction), the time necessary to form the necessary premeditation and thought may be "of very short duration." People v. Harris, 209 N.Y. 70, 75, 102 N.E. 546, 548 (1913). "[F]elony murder must occur while the actor or one or more of his confederates is engaged in securing the plunder or in doing something immediately connected with the underlying crime . . . ; [and] escape may, under certain unities of time, manner, and place, be a matter so immediately connected with the crime as to be part of its commission . . . . " People v. Walsh, 262 N.Y. 140, 148, 186 N.E. 422, 424 (1933) (citations omitted). *See also* People v. Marwig, 227 N.Y. 382, 125 N.E. 535 (1919) [11] Here, Jackson had robbed a hotel just before the gunfight.

previous felonious intent, *which the law transfers from one to the other*
. . . .
*Id.* at *198–201 (emphasis supplied).

11. New York now defines murder differently from former § 1044 but still classifies felony murder as a subdivision of the same section which includes murder "with

Felony murder and premeditated murder were historically one offense even if they involved proof of different facts, but one set of facts—*e. g.*, those in Jackson's case— might suffice for conviction of either offense. It does not aid us in resolving the double jeopardy issue, however, to know that the use of a special verdict was apparently available to the Jackson trial court. *See* former N.Y.Code Crim.Proc. § 438; 11 Syracuse L.Rev. 290, 292 (1960). Nor does it help us to know that Jackson's potential punishment was not the same for premeditated and felony murder, since under former N.Y.Penal Law § 1045–a (Penal Law of 1909, added 1963) [now N.Y.Penal Law § 125.35 (McKinney 1967)], a jury could recommend life imprisonment only for felony murder [§ 1044(2)] and not for premeditated [§ 1044(1)]. *See* E. Marks and L. Paperno, Criminal Law in New York, ch. 9, § 105 (1961).

We have, in short, a case that is sui generis, not controlled by any Supreme Court case on its facts,[12] and not capable of simple resolution either on an historical[13] or logical basis. Without disregarding the teachings of history or of the cases, we come to the point where we must weigh on a fine scale the competing interests of the public and petitioner. We must strike a balance between fairness to society in obtaining a verdict on a proper indictment and the avoidance of undue vexation to the defendant by a retrial on both original charges, considering what opportunity the defendant had to avoid the predicament by appropriate action, as well as the State's opportunity we have already mentioned. Petitioner was not acquitted on his first trial of felony murder; he was convicted of murdering a police officer, premeditated to be sure. Proof of the felony of robbery was admissible on either charge—no proof was had in respect to one count which was inadmissible for purposes of proving the other. The defenses to each were slightly different, it must be conceded, but there is no indication that there was any evidentiary prejudice to petitioner as a result of retrial on both charges, and it is undisputed that he could have been retried on a charge of premeditated murder only. While the State could have asked for narrowing instructions and even a special verdict, petitioner had an equal opportunity at the first trial and went to the jury without objection to that portion of the court's charge permitting the jury to cease deliberations if it found him guilty on one of the two counts. While the charge of felony murder carried with it a possible jury recommendation of life imprisonment, this was not a part of the deliberations leading to conviction in the first instance. Petitioner stands convicted of

---

intent." N.Y.Penal Law § 125.25(1) (McKinney 1967). *But see* Wis.Crim. Code, 45 Wis.Stat.Ann. § 940.03 (1958), defining felony murder as murder in the third degree. *See also* Ill.Crim.Code, 38 Ill.Ann.Stat. §§ 9–1(a) (1), (3) (Smith-Hurd 1972).

12. Duncan v. Tennessee, 405, 127, 92 S.Ct. 785, 31 L.Ed.2d 86 (1972) (6–3 decision), is of little aid, since there the defendant's first trial resulted in an actual acquittal on an improper indictment with a second trial on a "proper one; in dismissing the writ the majority referred rather inexplicably to the double jeopardy questions as being "so interrelated with rules of criminal pleading peculiar to the State of Tennessee, the constitutionality of which is not at issue . . . ," *id.*, as not to warrant hearing the case. Nor is

Simpson v. Florida, 403 U.S. 384, 91 S.Ct. 1801, 29 L.Ed.2d 549 (1971) (per curiam) (reprosecution for robbery of store customer barred by acquittal of charge of robbery of store manager—collateral estoppel), or Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (collateral estoppel bars retrial for robbery of one poker player where defendant was previously acquitted of robbing another poker player in same room).

13. The language of the double jeopardy clause does not help us. Unlike New Hampshire's, the clause does not speak only in terms of acquittal:

No subject shall be liable to be tried, after an acquittal, for the same crime or offense.

N.H.Const. pt. 1, art. 16.

the willful and malicious killing of a police officer following the perpetration of the felony of robbery, not once, but twice, albeit in the one instance after "some reflection and some thought that precede[d] the blow", People v. Hawkins, *supra*, 109 N.Y. at 411, 17 N.E. at 373, and in the other by carrying out an act "immediately connected with the underlying crime." People v. Walsh, *supra*, 262 N.Y. at 148, 186 N.E. at 424.

Fairness to the public appears to us to demand that a valid indictment end in a verdict where there has been *no conviction of a lesser-included offense* (*Green* and *Price*), no mistrial by virtue of the court's action sua sponte without the defendant's consent (*Jorn*), and where the cause for reversal of the conviction of the co-equal offense is reversible error in the admission of evidence, at least where, as here, the same evidence is admissible (or inadmissible) as proof of either offense charged (*cf. Cichos*). Nor is there any substantial unfairness to petitioner. Unlike the defendant in *Jorn*, Jackson in any event would have been subject to retrial on the premeditated murder count, and unlike the defendants in *Green* and *Price*, retrial on the felony murder count did not subject him to a greater penalty or stigma or greater embarrassment, expense or ordeal.

Judgment affirmed.

MANSFIELD, Circuit Judge (concurring):

I concur in the result, but on more limited grounds than those expressed by the majority.

The heart of the Double Jeopardy Clause, which is applicable to state criminal proceedings, Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L. Ed.2d 707 (1969),[1] lies in its prohibition against reprosecution of a defendant, on the same facts, for the same offense. Under settled New York law, the language of the indictment in this case[2] was sufficient to support convictions for premeditated murder, N.Y.Penal Law § 1044(1), *and* for felony murder, N.Y. Penal Law § 1044(2). People v. Lytton, 257 N.Y. 310, 315, 178 N.E. 290 (1931); People v. Osmond, 138 N.Y. 80, 84, 33 N.E. 739 (1893). At the time when the jury at Jackson's first trial was sworn, he was placed in jeopardy for, and was necessarily required to defend against, both forms of first degree murder under the New York statute. United States v. Jorn, 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); Newman v. United States, 133 U.S.App.D.C. 271, 410 F.2d 259, 260, cert. denied, 396 U.S. 868, 90 S.Ct. 132, 24 L.Ed.2d 121 (1969). There can be no doubt, therefore, that Jackson was twice tried by the State of New York for the crime of felony murder, N.Y.Penal Law § 1044(2), based on the same evidence.

The question to be resolved is whether Jackson's successful collateral attack of his conviction for premeditated murder, which unquestionably allowed the State to retry him on that charge under a judicially-created exception to the Double Jeopardy Clause, United States v. Ball, 163 U.S. 662, 672, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); Forman v. United States, 361 U.S. 416, 425, 80 S.Ct. 481, 486, 4 L.Ed.2d 412 (1960); North Caro-

1. Benton v. Maryland has been held to have full retroactive effect. See Ashe v. Swenson, 397 U.S. 436, 437 n. 1, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

2. The indictment read as follows:
    "The Grand Jury of the County of Kings, by this indictment, accuse the defendant of the crime of MURDER IN THE FIRST DEGREE, committed as follows:
    "The defendants, acting in concert and each aiding and abetting the other, on or about June 14, 1960, in the County of Kings, wilfully, feloniously and of malice aforethought, shot William J. Ramos, Jr., also known as William Ramos, Jr., with a revolver, and thereby inflicted divers wounds upon William J. Ramos, Jr., also known as William Ramos, Jr., and thereafter and on or about June 14, 1960, said William J. Ramos, Jr., also known as William Ramos, Jr., died of said wounds."

lina v. Pearce, 395 U.S. 711, 719–720, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), also allowed it to retry him on the felony murder charge.[3] I believe that under the unusual circumstances of this case it did.

Normally the retrial of a defendant who has successfully appealed his conviction is allowed only "for that same offense [which] has been set aside by" the defendant's appeal. Forman v. United States, 361 U.S. 416, 425, 80 S.Ct. 481, 486, 4 L.Ed.2d 412.[4] For example, a defendant who has been indicted for first degree murder but found guilty of a lesser included offense, such as second degree murder or voluntary manslaughter, may be retried after a successful attack upon his conviction only on the lesser included offense of which he was found guilty. Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); Price v. Georgia, 398 U.S. 323, 329, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970).

As the majority opinion recognizes, there is support for the theory that premeditated murder and felony murder are two separate and distinct offenses under New York law. The elements of each differ, and a jury at the time of Jackson's trials was permitted to recommend life imprisonment for a defendant convicted of felony murder, N.Y.Penal Law § 1045–a, but not in the case of a person convicted of premeditated murder. The two-offense theory is further supported by decisions upholding verdicts of felony murder and second-degree murder (a lesser included form of premeditated murder) on the same set of facts, People v. Leonti, 18 N.Y.2d 384, 392, 275 N.Y.S.2d 825, 832, 222 N.E.2d 591 (1966); cf. People v. Weisser, 36 A.D.2d 54, 319 N.Y.S.2d 131, 134 (4th Dept. 1971), and by People v. Bloeth, 16 N.Y.2d 505, 260 N.Y.S.2d 446, 208 N.E. 2d 177 (1965), where the defendant had been convicted of premeditated murder but acquitted of felony murder. His conviction was eventually reversed by this Court en banc. United States ex rel. Bloeth v. Denno, 313 F.2d 364 (2d Cir.), cert. denied, 372 U.S. 978, 83 S.Ct. 1112, 10 L.Ed.2d 143 (1963). On retrial, Bloeth was convicted of premeditated murder and felony murder. The Court of Appeals then reversed the felony murder conviction in a memorandum decision, ostensibly on the ground that the acquittal of felony murder at the first trial barred reprosecution for that offense despite the successful appeal of the premeditated murder conviction. See also People v. Howard, 27 A.D.2d 796, 279 N.Y.S.2d 79, 80 (4th Dept. 1967).

On the other hand, there is also respectable New York authority for the proposition that at the time of the acts here charged premeditated murder and felony murder were but different forms of the same crime, first degree murder as defined in N.Y.Penal Law § 1044. This was analyzed by Chief Judge Cardozo with his usual precision in People v. Lytton, 257 N.Y. 310, 314–315, 178 N.E. 290, 292 (1931), as follows:

"Homicide, we said, is not murder 'without evidence of malice and of felonious intent and a depraved mind' People v. Nichols, supra, 230 N.Y. [221] at page 226, 129 N.E. 883, 884. The malice or the state of mind may be proved by showing that the act was done with a deliberate and premeditated design to kill. The case will then fall under subdivision 1 (§ 1044). It may be proved by showing that the act was done by one then and there engaged in the commission of another felony. People v. Enoch, 13 Wend.

3. The *Ball* doctrine applies whether the conviction is voided by direct appeal or by collateral attack. United States v. Tateo, 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964).

4. It was long ago decided that "freedom would be a disproportionate reward for a trial error," United States v. Coke, 404 F.2d 836, 839 (2d Cir. 1968) (en banc), and that therefore reprosecution after an appellate reversal based on such error was justified. See United States v. Ewell, 383 U.S. 116, 121, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).

159, 174, 27 Am.Dec. 197; People v. Nichols, *supra.* The case will then fall under subdivision 2. In the one case as in the other a single crime is charged, the independent felony like the deliberate and premeditated intent being established solely for the purpose of characterizing the degree of the crime so charged, the evil mind or purpose inherent in the killing. People v. Enoch, *supra.* If there could be any doubt about this, the form of the indictment would be sufficient to dispel it. The rule is settled that there is no need to charge in an indictment that the homicide was wrought in the commission of another felony. It suffices to state in the common-law form that the defendant acted 'willfully, feloniously, and with malice aforethought.' People v. Nichols, *supra*; People v. Giblin, 115 N.Y. 196, 198, 21 N.E. 1062, 4 L.R.A. 757; People v. Osmond, 138 N.Y. 80, 33 N.E. 739. This would never do if the independent felony were conceived of as changing the identity of the crime instead of merely characterizing the degree of culpability to be imputed to the killer."

Turning to the present case the indictment does not charge Jackson in separate counts with (1) premeditated murder and (2) felony murder. It alleges simply in one count that Jackson "wilfully, feloniously and of malice aforethought shot William J. Ramos, Jr. . . . with a revolver, and thereby inflicted divers wounds upon William J. Ramos, Jr. . . . and thereafter and on or about June 14, 1960, said William J. Ramos, Jr. . . . died of said wounds". The judge who presided at Jackson's trial, taking the view that premeditated murder and felony murder were but two equal forms of the same crime, instructed the jury that it could convict Jackson of one or the other, but not both. The jury found Jackson guilty

of premeditated murder and, in accordance with the court's instructions, made no finding on the issue of whether he was also guilty of felony murder. To say that the jury considered the latter issue, much less that it acquitted Jackson of felony murder, would be pure speculation.

Unlike the situation in other cases holding that the Double Jeopardy Clause barred retrial of a count which had not been the subject of an expressed jury verdict, e. g., Green v. United States, *supra,* the failure of the jury in this case to render a verdict on the charge of felony murder cannot be equated with an implied acquittal of that charge. Nor can it be attributed to circumstances beyond the control of Jackson or his counsel, a lawyer with extensive experience in criminal trial practice. On the contrary, the record reveals that his counsel was content to have the case go to the jury on the basis formulated by the court.

As far as Jackson's counsel was concerned a verdict finding Jackson guilty of either premeditated or felony murder would have been fatal to his client, since conviction of either charge, which involved the killing of a New York City policeman, would probably have resulted in a death sentence.[5] The record reveals that he therefore kept away from any suggestion that there should be two verdicts, as has been done in some cases, see People v. Leonti, *supra*; People v. Bloeth, *supra.* His entire strategy was to persuade the jury that it should find Jackson guilty of a lesser degree of homicide, one which would call for imprisonment rather than for the death penalty. In accordance with this strategy, although he had ample opportunity to demand a disposition of the felony murder charge, whether or not it be considered the same offense as premeditated murder, he did not take any exception to the

---

5. Indeed, Jackson was sentenced to death, a sentence that was later commuted to life imprisonment by Governor Rockefeller. Since the jury, if it had found him guilty of felony murder, could have recommended life imprisonment, N.Y. Penal Law § 1045–a, the conviction of premeditated murder could hardly be classified as one for a lesser degree of homicide.

court's instruction, nor did he make any request for two verdicts.

In my view Jackson's strategy at the first trial amounted to a consent to the procedure followed by the trial judge, which precluded him from invoking the Double Jeopardy Clause upon a retrial after conviction for premeditated murder. His consent was essentially the same as that given upon the declaration of a mistrial or the discharge of a jury prior to verdict, both of which represent exceptions to the application of the constitutional guarantee against double jeopardy. United States v. Tateo, 377 U.S. 463, 467, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964); United States v. Pappas, 445 F.2d 1194, 1200 (3d Cir.), cert. denied *sub nom.* Mischlich v. United States, 404 U.S. 984, 92 S.Ct. 449, 30 L.Ed.2d 368 (1971); Gregory v. United States, 133 U.S.App.D.C. 317, 410 F.2d 1016, 1018 n. 2 (D.C.Cir.), cert. denied, 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969); Vaccaro v. United States, 360 F.2d 606, 608 (5th Cir. 1966); United States v. Burrell, 324 F.2d 115, 119 (7th Cir.), cert. denied, 376 U.S. 937, 84 S.Ct. 791, 11 L.Ed.2d 657 (1963); Raslich v. Bannan, 273 F.2d 420 (6th Cir. 1959).

